RECEIVED

JUN 22 2016

PRO SE OFFICE

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------x

MAXINE A. TODD,

                    Plaintiff,

           -against-

NEW YORK CITY HEALTH AND HOSPITALS
CORPORATION, OFFICE OF LEGAL AFFAIRS,
CLAIMS DIVISION; DIANE STONE, MD
ID #804849; DEEP LOHIA, MD LIC #268559;
NNAMDI ODIAH, MD, LIC #260378;
ALEX DOMPREH, NP;  LILY ZHU, RN;
MANUELA LORICO, RN; JOHN DOE, RN;
PARK CITY 3 & 4 APARTMENTS INC.,
LOUIS KRAMBREG, PRES OF CO-OP BOARD;
CHANDRA JAIN, CO-OP MGR;
BERLINGERIO, SHIELD #2501, PO;
MARCELLA VCLAK, PO SHIELD #951423;
FRANCISCO BALDANZA, NYC FIRE DEPT EMT,

                    Defendants,

----------------------------------------------------------x

**AMENDED COMPLAINT**
16-CV-2124 (LDH) (LB)

**CIVIL CASE**
Jury Trial: **Yes**

     Plaintiff was granted leave to file this amended complaint pursuant to the

order dated May 26, 2016, by the Hon. LaShann DeArcy Hall, United States

District Judge.

## I.    Parties in this amended complaint

     I am Maxine A. Todd, the pro se plaintiff and I reside at 97-10 62nd Drive,

Apartment #4K, Rego Park, New York 11374, which is situated in a cooperative

apartment complex known as Park City 3 & 4 Apartments Inc.

## A.  Plaintiff

|  |  |
|---|---|
| Name | Maxine A. Todd |
| Street Address | 97-10 62nd Drive, Apt. #4K |
| County, City | Queens, Rego Park |
| State & Zip Code | New York 11374 |
| Telephone Number | (718) 275-4542 |

## List of Defendants

Defendant No. 1    New York City Health And Hospitals Corporation, Office of
Legal Affairs Claims Division

Zachary W. Carter

Corporation Counsel of the City of New York

Attorney for Defendant

100 Church Street, New York, New York 10007

212-356-2505

Defendant No. 2    Diane Stone, MD ID #804849

c/o Elmhurst Hospital Center

79-01 Broadway, Elmhurst, New York 11373

Defendant No. 3    Deep Lohia, MD LIC # 268559

c/o Elmhurst Hospital Center

79-01 Broadway, Elmhurst, New York 11373

Defendant No. 4     Nnamdi Odiah, MD LIC #260378

c/o Elmhurst Hospital Center

79-01 Broadway, Elmhurst, New York 11373

Defendant No. 5   Alex Dompreh, NP
c/o Elmhurst Hospital Center
79-01 Broadway, Elmhurst, New York 11373

Defendant No. 6   Lily Zhu, RN
c/o Elmhurst Hospital Center
79-01 Broadway, Elmhurst, New York 11373

Defendant No. 7   Manuela Lorico, RN
c/o Elmhurst Hospital Center
79-01 Broadway, Elmhurst, New York 11373

Defendant No. 8   John Doe, RN
c/o Elmhurst Hospital Center
79-01 Broadway, Elmhurst, New York 11373

Defendant No. 9   Park City 3 & 4 Apartments, Inc.,
Represented by Jack L. Cohen
Law Offices of Charles J. Siegel
125 Broad Street, 7th Floor
New York, New York 10004
212-440-2309

Defendant No.10   Louis Kramberg, Pres of Co-op Board
c/o Park City 3 & 4 Apartments, Inc.,
98-05 63rd Road, #1K
Rego Park, New York 11374

Defendant No. 11   Chandra Jain, Co-op Mgr
c/o Park City 3 & 4 Apartments, Inc.,
98-05 63rd Road, #1K
Rego Park, New York 11374

Defendant No. 12  Berlingerio, Shield #2501, PO
                  NYC Police Department - 112th Precinct
                  68-40 Austin Street
                  Forest Hills, New York 11375

Defendant No. 13  Marcella Vclak, PO Shield #951423
                  NYC Police Department - 112th Precinct
                  68-40 Austin Street
                  Forest Hills, New York 11375

Defendant No. 14  Francisco Baldanza, NYC Fire Dept EMT
                  c/o NYC Fire Department
                  Bureau of Investigations and Trials
                  9 Metrotech
                  Brooklyn, New York 11201

**B.    Basis For Jurisdiction**

(I)    Federal Questions.

(II)   The following Constitutional statutory rights are at issue:

U.S.C. 42 Sections 1981, 1983 and 1985.  Violations of plaintiff's 4th and

14th Amendment rights are a substantial part of the amended complaint,.

<u>Background</u>

On July 23, 2013, Park City 3 & 4 Apartment's Inc., (Park City)  made a

bogus 911 call stating that I allegedly have a history of being emotionally

disturbed (EDP) and was refusing access to fix an alleged "fire" hazard.  This call

sent NYC 112th Precinct police officers, NYC Fire Dept., EMT's and Park City

4

workers to my apartment at 97-10 62nd Drive Apt., #4K, Rego Park, New York

11374, at about 11:30am on July 23, 2013.  They arrived unexpectedly and

because I was wearing my nightgown, I called thru my locked door and asked

them to give me five minutes to put cloths on.  However, they began to chop at my

door *so I ran and opened it* and at least eight people rushed into my home.  That

is, EMT Francisco Baldanza, PO Vclak, Berlingerio, PO, NYC Fire Dept. John

Doe, (male white fireman in a slicker) and four Park city workers (Edward Eric

Concepcion, security mgr., and maintenance workers Robert, Raphael and bldg.

super  Fabio).  About ten minutes after their arrival, defendants Baldanza and

Vclak forced me out of my home and left defendant PO Berlingerio, shield #2501

in charge of my apartment along with the four Park City employees.

　　Defendants Baldanza and Vclak took me to Elmhurst Hospital Center

(EHC),  97-01 Broadway, Elmhurst, NY 11373, a hospital operated by defendant

1- New York City Health And Hospitals Corporation, Office of Legal Affairs,

Claims Division (HHC), where I was unlawfully admitted and held from July 23,

2013 thru August 5, 2013.  I returned home to find it ransacked, burgularized and

furniture, walls and floors vandalized.  The bathroom that Park City claimed

needed to be fixed, was vandalized instead and a substance was applied to the

ceiling which flaked off within two weeks and caused me to develop skin leasion which have left scars.  My bathroom vanity was almost destroyed, the sink's water supply was cut off and a hole was left in the wall under the sink which, sent noxious fumes into my apartment that made me sick causing nausea, dizzyness and loss of hair, eyebrows and eyelashes. (See Exhibit A - photos of vandalism).

HHC and Park City, through its agents or employees, and defendants Bertlingerio, Vclak, and Baldanza acted under color of law in the unlawfull kidnapping and false imprisonment of plaintiff.  The defendants actions deprived plaintiff of her rights, privileges, and immunities secured under the Constitution of the United States of America and the laws thereunder pursuant to title 42 U.S.C. Sections 1981, 1983 and 1985.  HHC and Park City failed to properlly train and supervise their agents and employees whom they know must interect with the public and are in positions to impair a person's constitutional and civil rights. Therefore,  they are liable for the damage done to plaintiff who was wrongly deprived of her freedom and was subjected to kidnapping, false imprisonment, medical malpractice, and violation of her right to privacy and safety in her home.

Section 1981 Claim

Defendants HHC and Park City -  I believe that I can prove a USC Sec,

1981 claim against the defendant because I belive they did not treat me with the same level of care consideration, respect and professionalism as they would have treated a non-black "patient" under the industry and common practices of contractual hospital/patient relationships and in the case of Park City private corporation law.  Because if they had, I would not have been illegally and un-necessarily admitted to  HHC facility on 7/23/2013, smuggled onto a psych ward without due process or for any demonstrated psychiatric or medical need.

Furthermore, I was held on the HHC's psych ward populated by mostly young men who were drug offenders and or who had been recently released from jail or prison.  I was almost raped on 7/27/2013 by one of these men who stayed in a room across the hall from mine.  I do not believe if I were a white, sixty-four year old woman,  I would have been held on this particular HHC psych ward.

Defendant Park City (a private corporation),  is liable under the  USC 1981 clause which prohibits impairment of plaintiff's  protected Constitutional rights by non-governmental discrimination, by private corporations like Park City.  As a Park City shareholder and resident, I have been subjected to racial discrimination by some of their employees for years.  I believe Park City's employees actions started the events which have given rise to plaintiff's complaint, when they made the

bogus 911 call on 7/23/13 to get plaintiff removed from her co-op apartment that day and maybe forever.  Further, HHC and Park City employees actions towards plaintiff, fall under USC 1981 because:

(a)     Plaintiff is a black woman, a member of a racial minority.

(b)     Because I am black, Park City employee(s) bogus 911 call on 7/23/2013 not only falsely stated that I am allegedly an EDP and I believe falsely stated that I was the house-keeper,  (not the owner of my apartment-#4K).   I surmise that PO Berlingerio, PO Vclak and Fire Dept. EMT Baldanza believed the caller because Park City is a predominantly white owned co-op, and treated me as a person without any human rights....they did not even ask me to identify myself until after Baldanza and Vclak had forced me out of my home.  (c) Park City contains about eleven hundred apartments in its six-building co-operative building complex yet for more that twenty years,  I have always been one of a few black shareholder, proprietory leaseholder and residents.  I am the only resident who has had her apartment regularly and sequentially vandalized and burgularized, despite the presence of 24-hour security cameras and guards at the building's front door. Further, Since the present co-op board president and manager (<u>defendants Kramberg and Jain</u>) assumed their positions, I have been harassed mercilessly

because of my race.  (i) It started in 2003 after I was widowed with being charged late fees for my monthly maintenance payments although I always mailed payments in time and my checks cleared my bank in a timely manner. (ii) My apartment was oddly singled out for "apartment inspections" although my unit is owner occupied (not sub-leased) and I adhere to all the co-op by-laws.  My closest neighbours - #4J and 4L, are *not black* and like mine their apartments are owner occupied but, they were not subjected to "apartment inspections."  (iii) In January 2013, Doris Martinez a Park City (Chandra Jain's "secretary"), told me that going forward whenever I call to request repairs (persuant to my proprietary lease), only a newly hired employee, Robert, would be sent to my apartment.  No such restriction was put on any other co-op shareholder.  On 8/5/13, as I was being released HHC employee James Egelski (social worker) called Park City and spoke with Doris Martinez in my presence, to ask her who had the keys to my apartment and he subsequenly told me that Martinez did not want me to return to Park City. I believe the years of racial harassment I have suffered at Park City was the prelude to my illegal removal from my home on 7/23/2013.

B.    <u>Section 1983</u>

Defendants acted under color of State law when they deprived me of rights

under the Constitution or federal law.  Therefore, the private defendants are not entitled to any immunity under Wyatt v. Cole and the municipality is not entitled to immunity under Monell.  Plaintiff's rights under New York Mental Hygiene Law (MHL) were collectively violated by the  HHC's employees at Elmhurst Hospital Center (EHC).  Defendants Diane Stone MD and Deep Lohia, MD are listed in my medical records as the attending emergency room physicians who authorized my illegal admittance at HHC's psych facility.  (See Exhibit B excerpts from the EHC medical records).  I  herein swear  that *I have never met, seen, spoken to or was given any medical or psychiatric examination or evaluation by Dr. Diane Stone or Dr. Deep Lohia, at any place or point in time. They committed fraud and have violated my constitutional due process rights.* However, I met Defendant Nnamdi Odiah, MD the attending physician on A6 psych ward, on July 25, 2013 when I was called into a meeting with him and his staffers and  I  immediately told him that I was kidnapped from my home and smuggled onto the psych ward at about 2AM on 7/23/13, and told him that after waiting in the emergency room for the mandatory MHL psychiatric examination for more than twelve hours, I had not been examined and I demanded to be released.   At this point Dr. Odiah was legally required to use the tools of his

profession and view reliable, probative and available evidence which would have revealed I was being thruthfull, that I had never been in psychiatric facility or have a history of being an EDP and release me. Instead Dr. Odiah made false entries in my alleged medical records, indicating that he had given me a psych exam on 7/23/2013 prior to my unnecessary illegal imprisonment on the psych ward and *before I ever met him.* Odiah's, Stone's and Lohia's negligence contributed to violations of my rights and liberties under the Constitution and states rights and as a result I was subjected to medical mal-practice, unlawfull imprisonment and kidnapping from the psych emergency room and moved onto the psych ward without, benefit of psychiatric diagnosis or any demonstrated need or valid reason.

Mental Hygiene Law Sec. 9.05(b) concerning Examining Physicians Medical Certification prior to admittance to a psych ward reads:

> "a certificate as required by this article must show that a person is mentally ill and shall be based on examination of the person alleged to be mentally ill within 10 days prior to the date of admission. The date of certificate shall be the date of such examination. All certificates shall confirm the facts and circumstances upon which judgment of physician is based and shall show that the condition of the person examined is such he/she needs involuntary care and treatment in a hospital..."

Furthermore, MHL Section 9.39 governing emergency admittance to

a psych ward requires that patients prior to admittance must be examined by

a staff physician and that;

> "within 48 hours of the time of your admission, you will be examined by
> another physician, who is a member of the psychiatric staff of the
> hospital. If he or she confirms the first physician's findings, you may then
> be kept in the hospital for a period of up to 15 days from the date of your
> arrival."

Doctors Stone, Lohia, Odiah and HHC other employees-defendants

Dompreh, Zhu, Lorico and John Doe acted under color of law and are liable to

plaintiff for USC damages suffered because of their negligent, professional mis-

conduct and illegal actions which resulted in her unncessary hospitaliztion.

Additionally, HHC's employee's as well as, Park City through their agents or

employees (defendants Kramberg and Jain) were negligent in the training and

supervision of its agents or employees and failed to take all steps necessary to

prevent the occurrence, giving rise to plaintiff's claim.

HHC employee defendant Manuela Lorico, RN who helped to engineer my

illegal placement on the psych ward at about 2AM on 7/24/2013, created a

municipal liability under Section 1983 when she forged my signatures on the

hospital's general Consent For Treatment forms thus violating my due process right of

informed consent for hospital treatment.   A valid claim for municipal liability

under Section 1983 exists under <u>Monell</u> if a plaintiff can show the existence of

unlawfull practices by subordinate officials that are permanent, common and

customary.  I believe I can, because Lorico forged my signature on many other

hospital forms that I was never given, and fearlessly filed them in my medical

records, (See Exhibit C - forms where Lorico forged my signature).  It would

appear that forging patients' signature on hospital consent forms is a common and

accepted practice at HHC's psych facility and hence 1983 liability for inadequate

or improper training of its employees who work in positions with patient's contact,

that could result in violation of a patient's constitutional rights.

HHC <u>defendant John Doe, RN - (man in bright blue scrubs, low-cut greying</u>

<u>hair and beard, about 5'10" tall average build and east indian in appearance.</u> I was

given drugs twice in the psych emergency room by <u>defendants Lily Zhu, RN and</u>

<u>Alex Dompreh NP,</u> the last time being at about 5:45pm and afterwards sat in the

waiting room to get the mandated MHL psychiatric exmination (which never

occurred).  I believe I fell asleep at about 6:15pm on 7/23/13 and awoke at about

1:20am on 7/24/2013, still seated in the *emergency room which was dark and I*

*was the only patient still there.*  I was terrified.  I then saw <u>John Doe</u> walking

around in the registration area which was dimly lit, and he was the only HHC

employee there.  At about 1:55am he came to me and I asked him if he was there

to take me to be examined by the psychiatrist and he said no that he was taking me

to the psych ward.  When I started to stand up I became frightened because I began

to stagger and felt very weak.  Defendant John Doe  took me up to A6 psych ward

and left me with defendant Manuela Lorico at about 2:00AM,  on July 24, 2013.

The next time I saw John Doe was on July 31, 2013 a little after midnight when he

opened my door and I screamed for him to get out and he retreated. Manuela

Lorico was the only employee in the nurse's station on A6 psych ward when I was

falsely imprisoned shortly after 2:00am on 7/24/13.  She placed me in room  #17

which was dirty and obviously not preprared to accept patients. John Doe

essentially kidnapped me from the emergency room and had Manuela Lorico

illegally imprison me on the psych ward when no other employees or supervisors

were around.  This shows the municipality's failure to train or superviser its

employees and can be considered official hospital policy or custom.  In light of the

duties of John Doe and Lorico, their negligent un-conforming actions indicates

lack of proper training and indicates HHC had  been indifferent to proper

employee training needs and must be held accountable under USC 1983.

14

<u>Defendants Alex Dompreh, RN and Lily Zhu, RN</u> subjected me to medical malpractice to facilitate my unlawfull restraint and unnecessary unauthorized imprisonment at HHC's psych facility on 7/23/2013.  Dompreh and Zu drugged me in the psych emergency room.  They gave me medication which they told me was to lower my blood pressure because they said I could have a stroke.  They gave me medication twice in less than an hour, and I fell into a sudden and deep sleep shortly after  I took the second set of pills and woke up about eight hours later on 7/24/2013.  they committed medical malpractice and violated my constitutional right to bodily integrity and security and are liable for USC 1983 damages.

<u>Defendant Berlingerio, PO Shield #2501, was left in my apartment with</u> <u>Park City employees or agents Edward Eric Concepcion, Edward, Fabio and</u> <u>Raphael. in</u> violation of the 4th Amendment which stipulates that;

> "the officers post-entry conduct must be carefully limited to achieving the objective which justified the entry - the officer may do no more than is reasonably necessary to ascertain whether someone is in need of assistance and provide that assistance."

Berlingerio failed in his duties under 4th Amendment sections because he never spoke to me, tried to find out if I needed help or was really an EDP person.  He failed to prevent <u>defendants PO Vclak and EMT Berlingerio</u> from illegally forcing me out, after the Park City workers were already in my apartment, and had access

15

to fix the alleged "fire" hazard.  When Vclak and Baldanza were taking me out of

my home I asked PO Berlingerio to write his name and that of all the people who

remained in my apartment in my absence, but he did not.  I learned his name and

shield number when I saw him in front of my building in August 2013.  The Police

report for the events of 7/23/13 is falsely named an "Aided Person Report" (#669),

when no aid was given to me nor did I need any.  The report shows my wrong age

and birthday, falsely states that I am an EDP who allegedly barricaded myself in

my home, and *Berlingerio's name is missing from the police report*.  Further, the

police incident report which was authored by PO Vclak  falsely states that

Lt.Mendes was "on scene."

C    <u>Section 1985</u>

I believe that a conspiracy caused plaintiff a higly competent, self-sufficient,

law abiding American Citizen, to illegally end up on HHC's psych ward, because

of an alleged maintenance issue at her Park City co-op.  I believe defendant Park

City Apartments Inc., conspired with defendant New York City Health and

Hospitals Corp. to get me admitted to HHC's psych ward.  Conspiracies by their

very nature are secretive and probably can only be proven through circumstancial

evidence.  Below I will try to provide evidence to show that there was an

agreement between the state actor  HHC and the private corporation Park City, to

16

act in consort to violate my rights under the US constitution, which caused me real

damages, un-quantifiable damages, and negatively changed my life forever.  I

respectfully ask the Court to consider that:

(a)    Defendant Louis Krambeg - has friends and or influence in high

places at HHC and may have coordinated my illegal removal and wrongfull

admittance at HHC's psych facility on 7/23/2013.   Kramberg has been the

president of Park City Co-op Board and the permanent member of the Admission's

Commitee (which decides who can buy co-op shares or live at Park City) for more

than nine years. *Kramberg also has a thirty--eight (38) year association with*

*HHC -* "Louis worked for and consulted with N.Y.C. Health & Hospitals Corp.

for over 38 years as Financial Supervisor, Director of Training and Director of

Outreach & Marketing." (See Exhibit D -Kramberg's bio provided to Park City

shareholders).

(b)    Defendant Chandra Jain, Park City's buildings manager who reports

directly to Louis Kramberg, probably made the bogus 911 call on July 23, 2013

falsely stating: (i) I am an emotionally disturbed person, (ii) that I am incapable of

caring for myself or property...that I am dirty and do not clean myself or my home;

falsely stating that I had previously been an in-patient in a psychiatric facility (iv)

falsely stating that I have to take psychiatric medication and (iv) that I do not have

17

any societal or familial support.  The bogus 911 caller provided this information

because of familiarity with New York Mental Hygiene Law which would consider

this information descriptive of a person in need of emergency in-patient

psychiatric hospitalization.  Note that I am one of seven siblings who live in the

New York tri state area, and I had previously provided their contact information to

Park City's security manager Edward/Eric Concepcion in December 2008 yet,

when I was taken to HHC my family was not contacted and my apartment keys

were given to Park City super Fabio, who oddly is listed on the police incident

report as the "friend" who was contacted.   I called Chandra Jain from the HHC

psych emergency room on 7/23/13 at about 5:20pm to ask for his help to get out of

there.  Michael Besse answered (718-897-2000) and I told him of the invasion at

my home earlier that day and that it was very important that I speak to Jain since I

was afraid.  Chandra Jain refused to accept my call which indicates to me he did

not want to prevent my false imprisonment at HHC's psych facility.

(c)     Kramberg and Jain  - I believe they teamed up again with HHC to get me

committed again to its psych ward, by making another bogus 911 call on or about

August 16, 2013 falsly claiming that there was the another leak in my apt. and

alleging that I was once again refusing access to fix the leak.  Note since my return

home on 8/5/13 there had not been a leak in my apt. nor had Park City

18

contacted me about any leak or tried to access my apartment.  This bogus 911 call also falsely claimed that I was psychotic, was dirty, unable to care for myself or property and needed adult supervision. As a result, *on September  18, 2013 Dr. David Klein and caseworker Enamul Majumder of NYC Human Admin. Dept. of Social Services, Adult Protective Services* unexpectedly arrived at my home at *about 10:20am.*   They were accompanied by pollice from the 112th precinct (Lt. Mendez, PO Libongo, PO Maiser).  (Exhibit E - Court Order for access by Supreme Court of the State of NY County of Queens, Index #17102/13).  I was still wearing my nightgown but this time I did not ask for a few minutes to get dressed but immediately let them in.   I was told that someone had secretly made an application to APS for "protective services".  I was humiliated and upset about the invasion of my privacy but I permitted Dr. Klein to give me a psychiatric evaluation in the presence of the caseworker and the police.  They also  inspected the cleanliness of my person and home and living conditions and concluded that this 911 call to APS was bogus and left me alone - Klein writes in his psych evaluation report that "the apartment was immaculately clean and well furnished" and described my appearance as "adequately groomed and dressed AA woman."  I subsequently received the decision on the APS referral which found that, " You have sufficient mental capacity and or physicial ability to manage your own

19

affairs; and "You nave no unmet capacity and or physicial ability to manage your own affairs". (See Exhibit  F - APS Notice of Eligibility Determination). Incidentally, whoever (HHC or Park City) applied to get APS to take over my life falsely states in the Court petition to get access to my home on 9/18/2013, that I had been admitted to the psych ward on July 27, 2013 and remained there for one week.   Note that this duplicate admission date of 7/27/2013 was fraudulently created by social worker James Egelski whom I met on 7/25/2013, see (Exhibit G which shows two **admission dates - July 23, 2013 & July 27, 2013 on the Adult Discharge Form).**  On meeting Egelski, I told him that  I had been kidnapped and smuggled onto A6 ward, and that I had not been diagnosed or given any psychiatric exam and I demanded to be released. Egelski replied that there was a psychiatric evaluation by Dr. Deep Lohia in my file.  I told him I had not been examined by Lohia and asked to view my file which is an almost entirely fraudulent document.  I was shocked to read Lohia's report which was false and libelous (that I was malodorous/bad breath), and  included a false physical description of me.  As I read the file and pointed out to Egelski that Lohia was a fraud that I had never met Lohia, he slammed the file shut.  On 7/26/13 I asked Egelski to review my alleged file again but he refused to let me see it.  His negligence in doing any probative inquiry to learn the verasity of my claim of false

20

imprisonment on A6 contributed to my illegal extended stay in that hell hole.  On 8/5/13 when Egelski gave me my discharge papers I noticed the two the different dates and asked him why, but he brushed me off.

(d)   Defendant Francisco Baldanza was sent on 7/23/13 to remove me from my home and take me specifically to HHC psych facility (EHC) where he knew I would be admitted, without psychiatric certification or court order (which is required under Mental Hygiene Law), with the collusion of HHC's psych room employees.  I told Baldanza that I wanted to be taken to nearby Forest Hills Hospital but he said he was taking me to EHC because they "have what I need". EHC's psych emergency room nurse defendant Lily Zu initially refused to admit me telling Baldanza that he did not have the proper authorizations to have me admitted.  He  told her the authorizations were on his computer, which was broken.  They then had a wispered conversation and Baldanza went outside for a few minutes and returned with a man (whom he said was his supervisor, Sgt. Wakely) but Zhu still refused to admit me.  Baldanza left again and returned with another man whom he said was his other supervisor Lt. Lahey and they went into Zu's office and Lily Zhu illegally admitted me at 12:01PM on 7/23/2013. Baldanza and Lily Zu's, collusion resulted in my freedom being stolen for two weeks. I have made written and verbal complaints to Baldanza's employer for his illegal conduct

21

but I've not received a response.   See (Exhibit H ltrs. with USPS proof of
delivery).

**4th Amendment violations**

NY Police Officer Berlingerio, Shield #2051 was left in charge of my home
on 7/23/13 with Park City employees Edward/Eric Conception, Edward, Fabio and
Raphael.   The 4th Amendment stipulates that, "the officer's post-entry conduct
must be carefully limited to achieving the objective which justified the entry - the
officer may do no more than is reasonably necessary to ascertain whether someone
is in need of assistance and provide that assistance."   Berlingerio failed in his
duties by remaining in  my home after I had been forced out.  I subsequently
obtained the police report for the invasion of my home on 7/23/2013 and was
shocked.  It is falsely described as an Aided Person Report (#669), and showed a
wrong age and birthday for plaintiff and falsely states that she was an EDP and
falsely states that Lt. Mendes was "on scene."  Berlingerio's name and his
participation in the entry and take over of  my home on 7/23/13 is absent from the
police report (ACR #669), authored by PO Marcella Vclak.

Defendant Marcella Vclak Shield #951423, PO came into my home on
7/23/13  without any certification from any medical/psychiatric professional
certifying that plaintiff needed to be seized for in-patient psychiatric care yet, she

and EMP Baldanza took me out of my home in handcuffs within ten minutes after they entered. My request to take my pocketbook (which contained my soc. sec. card, bankcards, checkbook, ID's and phone and keys) was denied.  I was forced to leave everything an identity thief needs to steal my identity.  In fact a few months later I found items in my mailbox, addressed to my apt., from NY State Taxation & Finance, Queens Division of Jurors and Net Spend for persons whom I do not know or who have any connection with me or my co-op (see Exhibit I ).  I also began to receive numerous credit solicitations in my deceased husband's name.  Most egregious however is on the way to the hospital Vclak asked me for my next of kin information and I gave her the phone numbers for my mother and sister, which she wrote down in her notebook, but she failed to list them as  my emergency contact.  Instead she put the Park City super, Fabio as my contact. Had my family been contacted I would not have been placed on the psych ward and the horror that began on 7/23/13 would have ended that day.  The 4th Amendment in part says;  "the right of the people to be secure in their person's houses, papers and effects against unreasonable searches and seizures shall not be violated..."  Defendant Vclak is liable for USC 1983 damages because she assisted EMT Baldznza to violate my Constitutional rights.

Additionally, Park City, contrary to the 4th Amendment, literally seized my

23

apartment from 7/23/2013 until 8/5/2013 when I retrieved my keys from the Park

City super, Fabio. ( See exhibit J - medical record 7/23/13 entry by Ryan Siatta

which reads "Writer spoke with Yaw, who reported that himself, the building

super - Fabio, and their boss "Safety & Security closed and locked the door" and

that the key to patient's apartment (4K) is with the building super. Yaw was

reached at 347-234-9773.  Patient informed".  Note that many years ago, I gave

Park City my contacts in case of emergency that is, my sister, mother and or

brother's information. On 7/23/13 Park City should have informed my family of

my removal from my home, and they should have been given my apartment keys.

John Doe, RN - I was given drugs twice in the psch emergency room by

Lily Zhu and Alex Dompreh who told me I would next be examined by the

psychiatrist.  However, shortly after Lily Zu gave me "medication",  I fell asleep at

about about 6:15PM  on 7/23/13 and I awoke on 7/24/13 at about 1:20AM in the

emergency room. *It was darkened, and there were no other patients.* I was

terrified. The only lit area was the registration section and I saw John Doe walking

around.  I did not see any other employees.  At about 1:55AM he came to me and I

asked him if he was there to take me for the psychiatric examination and he told

me no, that he was taking me to the ward, and when I stood up I could barely walk

24

because I was staggering and this is when I knew that Zhu and Dompreh had drugged me. John Doe took me to defendant Manuela Lorico on A6 psych ward. The next time I saw John Doe was on 7/31/13 a little after midnight when he came to my room and I screamed at him to get out and he retreated. Manuela Lorico was also the only employee in the nurse's station on A6 ward and she put me me in room #17 in the back of the ward. John Doe essentially kidnapped me from the emergency room and had Manuela Lorico illegally imprison me on A6 ward when no other employees or supervisors were around. This indicates the municipality's failure to train or supervise its employees and can be considered official policy or custom. In light of the duties of these employees and their actions, it indicates a lack of proper employee hospital protocol and training which resulted in violation of plaintiff's constitutional rights. HHC policymakers can therefore, be said to have been indifferent to proper employee training needs and be held accountable under USC 1983.

On July 23, 2013 the covert bogus call was made to 911 and started events which were designed to damage if not destroy the plaintiff's privacy, sense of security in her home, her personal property, her good name and her bodily integrity. The result is that the plaintiff was victimized by defendants HHC, Park City and their respective employees and agents who caused her to be kidnapped,

falsely imprisoned, un-necessarily hospitalized, subjected to negligent medical malpractices and real property damages. Plaintiff's US Constitutional and New York States rights and liberties were impaired or denied resulting in damages which the plaintiff aims to have remidied in a lawsuit.  She has been frustrated in her efforts to decipher who and what is the cause of the damages she has suffered. For example, plaintiff has made three written F.O.I.L requests  to obtain the transcripts of the 911 calls have been denied.  See (Exhibit K - FOIL request ltrs. and USPS proof of delivery).   Additionally, HHC's agent Elmhurst Hospital Center has created a largely fraudulent medical record I/N/O Maxine Todd to cover-up its illegal hospitilazation and administration of psychotropic drugs, without diagnosis or demonstrated need.  There is  a material dispute of facts of the cause of this complaint which can only be settled in a trial for punitive damages where expert witnesses can be called to verify the accuracy of plaintiff's alleged medical records.

   Liberty - Courts have recognized that involuntary civil committment severely infringes on a person's right to be free from governmental restraint because it effects one's right to be confined unnecessarily.  I was illegally restrained on HHC's locked down psych ward when I did not pose a risk of injury to myself or others.  I was wrongly deprived of my right of liberty guaranteed

26

under the 14th Amendment.  (See Exhibit L - entries in the medical records showing that I was not violent or suicidal or danger to anyone).  I was never given any psychiatric examination for the entire two weeks that I was falsely imprisoned. HHC's facility failed to access or verify my psychiatric state before taking away my liberty.  In fact the only psychiatrist who examined me was Dr. David Klein, who was sent to my home on September 18, 2013 by NYC APS  and found me quite competent and not a danger to mysef or others.

Malpractice suffered - Negligent treatment and forced administration of anti-psychotic medications violated rights to make informed consent decisions and constitutes assault and battery.  More egregious  plaintiff had not been diagnosed by any psychiatrist at HHC's facility prior to during the time she was in custody (despite the false entries in plaintiff's alleged medical records).  Additionallty, medicating me when it was unnecessary violated my right to bodily interity and personal security.

Damages suffered - The plaintiff is an extremely clean living woman who for more  than a decade had not taken any priscription medication, except for a couple of occasions when they were prescribed to treat skin conditions.  As a result,  forced medication was a shock to her system.  (a) For example I developed painfull blood filled postules in my mouth which improved within days when I

27

returned home and stopped injesting psychtrophic drugs. (b)  Plaintiff's pre-existing hypertensive condition was dangerously aggravated by her unlawfull hospitalization at EHC, which caused a return of migraine headaches. The stress that defendants have caused me is incalcuable and my sense of well-being has been destroyed. (c)  I was publicly embarrased and humilated when defendants Baldanza and Vclak walked me through the lobby of my residence in handcuffs, in my nightgown and no underwear. (d)   I was falsely reported as being an (EDP) without diagnosis or proof. (e) My constitutional right to live where I wish has been denied through no fault of my own.  I bought my co-op apartment more than twenty years ago because I intended to live out my natural life at  Park City, but I now believe if I continue to live there, I will be killed.  (f)  I was hurt and humiliated by the libelous entries that Dr. Deep Lohia (who has never met me or examined me) entered in my alleged medical record.  Likewise  Dr. Nnamdi Odiah whom I met on 7/25/2013,  put libelous false entries in  my alleged med. records although he had never examined me.  (f) My home was searched, burgularized and vandalizeed to the cost of thousand of dollars because of my false imprisonment at HHC's psych facility.

Therefore, plaintiff respectfully asks this Court to permit the amended complaint to  proceed to a U.S.C. 1983 court proceeding to seek remedy for the

damages done to her.  Additionally, plaintiff seeks an order pursuant to NY

Mental  Hygiene Law to expunge the fraudulent medical records concerning  her

unlawfull and unnecessary false imprisonment at HHC's psych facility, at

Elmhurst Hospital Center from July 23, 2013 thru August 5, 2013.

Punitive damages award is being sought because of the egregious conduct

of defendants and the harm they have done to the plaintiff.  She suffered because

of their gross negligence and fraudulent intent, which has directly injured the

petitioner and will negatively affect her for the rest of her life.  I now live in fear

because of the events which began on 7/23/2013 and now whenever an

unexpected person comes to my door my heart palpitates.   I have been

traumatized and now live in constant fear that what happened then, could happen

again and this is extremely hard since,  I am a widow and I live alone.  I am

seeking a monetary punitive award of at least two hundred and fifty-seven

thousand dollars ($257,000) and whatever other relief the Court deems just and

proper.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this 21st day of June, 2016

Rego Park, New York

Maxine A. Todd, Pro Se
97-10 62nd Drive, Apt., #4K
Rego Park, New York 11374

29

6/22/16