**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------x

Maxine A. Todd,

    Plaintiff,

-against-

NEW YORK CITY HEALTH AND HOSPITALS
CORPORATION *Office of Legal Affairs Claim*
*Division;* ADMINISTRATOR EMILY C. STONE
*Executor of Diane Stone's Estate;* MD DEEP LOHIA
*Lic. #268559;* MD NNAMDI ODIAH, *Lic.#260378;*
NP ALEX DOMPREH; RN LILY ZHU;
RN MANUELA LORICO; R.N. SEWDAT NIRANJAN;
PARK CITY 3 & 4 APARTMENTS INC.; LOUIS
KRAMBERG, *President of Co-op Board;*
CHANDRA JAIN, *Co-op Manager;*
PO BERLINGERIO, *Shield #2501;*
PO MARCELA VCLAK, *Shield #951423;*
FRANCISCO BALDANZA, *NYC Fire Dept. EMT,*

    Defendants.

------------------------------------------------x

16-cv-2124 (LDH) (LB)

Plaintiff Maxine A. Todd
Oposition to Supplemental
Statement of Undisputed
Facts Pursuant to Rule 56
Motion for Summary
Judgment by Adminstrator
Emily Stone Executor of
Diane Stone's Estate Dated
03/12/2020

JURY TRIAL: PLAINTIFF

**PLAINTIFF'S OPPOSITON TO SUPPLEMENTAL STATEMENT OF
UNDISPUTED FACTS PURSUANT TO LOCAL RULE 56.1 ON BEHALF
OF EMILY STONE AS EXECUTOR OF ESTATE OF DIANE STONE M.D.**

On March 12, 2020, Heidell, Pittoni, Murphy & Bach by Gabrielle Apfel, Esq, the counsel to the Hospital Employee Defendants served me with a Supplemental Statement of Undisputed Facts pursuant to Local Rule 56.1 on behalf of Defendant Administrator Emily Stone as Executor of Diane Stone's Estate, and one of the Hospital Employee Defendants in the captioned Amended Complaint. I dispute the assertion that there are no triable issues remaining

1

in this matter, which is supported herein by Plaintiff Maxine A. Todd's Affidavit in Opposition to the Hospital Employee Defendants Rule 56 Motion for Summary Judgment dated, as Exhibit 3, and annexed to the Hospital Employee Defendants Rule 56 Motion, dated March 3, 2020.

STATEMENT OF UNDISPUTED FACTS FOLLOWED BY PLAINTIFF'S OPPOSITION

1.  On july 23, 2013, Maxine Todd was transported to Elmhurst Hospital Center's Psychiatric Emergency Depatment. A copy of FDNY Prehospital Care Report is annexed as Exhibit A. It reflects that on July 23, 2013, Ms. Todd barricaded herself in her apartment and refused the entry of NYPD or EMS. Ms. Todd advised representatives of law enforcement that she was being criminilized and harassed by unknown indviduals since the death of her husband in 2002, and that her apartment has been terrorized for the last couple of years. Employees of the FDNY believed Ms. Todd to be a threat to herself and others when she became verbally and physically abusive. In light of her interactions with representatives of law enforcement and the FDNY, Ms. Todd was thereafter transported to Elmhurst Hospital Center's psychiatric Emergency Department by EMS, where it was requested that a psychiaric evaluation be perfo.rmed on Ms. Todd Id.

Pl's Disputes 1, because it is false, vague and ambigious. The fact is on July 23, 2013, I was seized in my home and transported to EHC's locked down Psychatric Emergency Room (PER)by FDNY EMT Francesco Baldanza and NYPD officer Vlack. "EMS" was not present. (Amd.Compl. Pg.4-6). I dispute the false allegations that I was allegedly "barricaded" and the lie that I allegedly advised "law enforcement" of any of the statements recounted. It is also a lie that I allegedly became "verbally and physically abusive". (Ex. 3, Paragraphs 34, 35, 42).

2.  On July 23, 2013, at approximately1:19pm, Ms. Todd arrived at Elmhurst Hospital Center's Psychiatric Emergency Department, also called the Comprehensive Psychiatric

Emergency Program, or CPEP. A certified copy of Plaintiff's hospital chart is annexed as <u>Exhibit B.</u>

<u>Pl disputes 2</u>, because of the false timeline and location of EHC where I allegedly arrived. Nevertheless, the fact is I was transported by FDNY and NYPD directly to EHC's locked-down Psychiatric Emergency Room (PER) at about 11:00am. I was never admitted to EHC's CPEP department. (Ex. 3, Paragraphs 35, 42, 43).

3. On July 23, 2013, at approximately 1:19p.m. Ms. Todd was triaged and assessed by Lily Zhu, RN in Elmhurst Hospital Center's Psychiatric Emergency Department (Ex.B, Bates 15-21). The Affidavit of Nurse Zhu is annexed as <u>Exhibit C</u>. Nurse Zhu noted that, per reports, Ms. Todd was terrified to go out of her apartment, refused to let police in, and believed people were sending toxic gas into her apartment. (Ex. B, Bates 13; Ex. C, Para. 7). Ms. Todd reported that she had one suicide attempt in 2002 by which she cut her wrist. (Ex.B, Bates 18; Ex. C. Para 7. Nurse Zhu noted the plaintiff had delusions involving paronia about people poising her. (Ex.B, Bates 19; Ex, C, Para 17).

<u>Pl's dispute 3</u>, because it is defamatory and false because I was actually triaged in the PER by Lily Zhu, at about 12:01pm, and I object to the false allegations of the statements therein which I never said to anyone at EHC durint the Incident. Specifically, I have never said that allegedly I had "one suicide attempt in 2002. (Exhibit 3, Paragraphs 36, 37, 38, 42, 43).

4. On July 23, 2013, Alex Dompreh, NP was working as a nurse practitioner in the Elmhurst Hospital Center's Psychiatric Department. The Affidavit of Nurse Practioner Dompreh is annexed as <u>Exhibt D</u>. On July 23, 2013, at approximately 3:39P.M., Alex Dompreh, NP examined Ms. Todd. (Ex. B, Bates 44-48). Nurse Dompreh diagnosed Ms. Todd with uncontrolled hypertension, (Ex.B, Bates 48; Ex.D, Para 7).

Pl's disputes 4, because of the false timeline and location alleged. Nevertheless, Alex Dompreh was working in EHC locked-down Psychiatric Emergency Room, where he examined me at about 2;00pm on 07/23/2013. It is fales that Dompreh allegedly diagnosed "Ms.Todd" with hypertension because I told him, that I had hypertension which had been diagnosed decades earlier. (Exhibit 3, Paragraphs 37, 38, 41).

5.       On July 23, 2013, at approximately 3:000pm Social Worker Ryan Saitta interviewd Ms. Todd. (Ex.B, Bates 26-40). Ms. Todd told Social Worker Ryan Saitta she had a history of depression and that she previously attempted suicide by cutting her wrist. (Ex.1 at 199:23; Ex.B, Bates 27). Social Workekhr Saitta noted that Ms. Todd presented as malodorous and disheveled with poor hygiene. She was irritable, with rapid speech. Ms. Todd stated, "Someone wanted to come into my apartment and I refused then the police broke down the door." She was difficult to redirect, with tangential thought process, and perseverating on her paronia and that her door was broken down. She was paranoid, reporting that people have been breaking into her apartment, vandalizing and destroying her property, pouring toxins on the rug, and using bathroom pipes to release toxins into her apartment, which was giving her rashes and destroying her clothing. She exhibited somatic delusion involving her skin feeling hot and burning. Ms. Todd reported that she changed her locks 5 times, and thinks people are stealing personal informaton and documents to commit fraud and identity theft. She reported she does not leave her apartment except for once a month when she goes food shopping. She stated she is a victim of organized gangs and stalking. She explained that people are waiting to see when she leaves and follow her when she does. She stated that she had been blaming her husband for this, but after he died she relized it was other people. Ms. Todd acknowledged that she has hypertension but does not see a doctor. She denied any hallucination or suicidal and homicidal ideations. She

also reported that her brothrer has schizophrenia. Ms. Todd reported that in 2000 she cut her wrist in a suicide attempt. She had been seeing a therapist over 12 years ago for depression, but was not receiving current or recent treatment. (Ex.B, Bates 36, 37, 38, 39, 41,).

Pl's disputes 5, because it is false, defamatory and libelous with a false timeline. Nevertheless, I met with the PER social worker Ryan Saitta at about 2:35pm on o7/23/2013. I was not allegedly "malodorous", "disheveled" with "poor hygiene." See (Med. Rec, Bates stamped RA16, RA24). I dispute the defamatory characterization of the lies of my affect/behavior which are lies to falsely make appear as al alleged mentally ill person. Furthermore, I never allegedly made the statements asserted. However, in answer to Saitta question if anyone in my family had a mental illness I replied that my brother had been diagnosed with schizopherenia. (Exhibit 3, Paragraphs 36, 37, 38, 41, 42, 43)

6. On July 23, 2013, Psychiatric Attending Dr. Deep Lohia was the attending emergency room psychiatrist in the Elmhurst Hospital Center Psychiatric Emergency Department (CPEP). The Affidavit of Dr. LohIa is annexed as Exhbit E. Between approximately 3:00-500 p.m. Dr. Deep Lohia examined Ms. Todd in Elmhurst Hospital Center's Psychiatric Emergency Department. (Ex. B, Bates 21-40; Ex. E. Para 11).

Pl's disputes 6, because it is false, including the timeline and locations. The fact is I never met Dr. Deep Lohia on 07/23/2013, between 3:00-5:00pm, because I was never allegedly admitted to CPEP. It is a lie that Dr.Lohia allegedly "examined Ms.Todd" in CPEP or anywhere else or time, because he never did. (Exhibit 3, Paragraphs 38, 42, 43).

7. In his Attending Note, Dr. Lohia noted that Ms Todd reported no active psychatric treatment, a past history of depression and a prior sucide attempt. She was living alone with poor social support. Ms. Todd was brought in by EMS after she was found to be paronoid,

5

barricading herself in her apartment when her building supervisor tried to inspect her home for leakage. Ms. Todd presented as disheveled, paranoid disorganized, and currently unable to care for herself safely needing in-patient stabilization. (Ex. B, Bates 39-40; Ex. E, Para 12). Ms. Todd was diagnosed with Psychosis NOS (not otherwise specified)., hypertension, poor insight, and paronoid delusions. (Ex.B, Bates 34; Ex, Para 12). Dr. Lohia executed documentation certifying that Ms. Todd required inpatient psychiatric care for treatment that could be reasonable to be expected to improve the patient's conditon and/or diagnostic study. (Ex. B, Bates 39-40P; Ex. E, Para 12).

Pl's disputes 7, because it is false, defamatory and improbable because I was never allegedly examined by Dr.Lohia or have been anywhere him. Therefore, I dispute the lie of his false psychiatric conclusions about me, or my affect or alleged mental condition. I further object to the lie that I was allegedly brought in by "EMS" because I have never had any contact with this unknown EMS personnel. Furthermore, it is my belief and experience that Dr. Lohia's notes are parroted from the lies which the PER social worker Ryan Saitta entered in my EHC Medical Record.  See (Amd. Compl. Pg.4-6), & (Exhibit 3, Paragraphs 38, 34, 43).

8.      On July 23, 2013, Dr. Lohia executed Form OMH 474 for Ms. Todd's Emergency Admission pursuant to Section 9.39 of the Mental Hygiene Law. (EX B., Bates 08). In this form, Dr. Lohia certifies that he examined Ms. Todd prior to ther admission, and found that there was a reasonable cause to believe that Ms. Todd had a mental illness for whch immediate observation, care and treatment in a mental hospital was appropriate, and which was likely to result in serious harm to herself or others. (EX. B, Bates 08; Ex.E, Para 13).

Pl's disputes 8, because it is false libelous and defamatory because Dr. Lohia never gave me a psychiatric evaluation, despite the fraudulent Sec.9.39 MHL form which he entered in my

6

Med. Rec. Furthermore, I was never allegedly diagnosed by Lohia or anyone else at Elmhurst Medical Center with any alleged mental illness. (Exhibit 3, Paragraphs 38, 41, 42, 43).

9. Ms. Todd was given the written Notice of Status and Rights for an Emergency Admission under MHL section 9.39. This document advises patients of the Mental Hygiene Law, and if they do not believe they are in need of treatment, their right to contact Mental Health Legal Services, and to make a written Request for a Court hearing, and to representation by an attorney. Dr. Lohia signed this form to attest that a copy of this form was given to Ms. Todd on July, 2013. (Ex. B, Bates 10/ Ex.E, Para 15, Dr. Lohia had no further contact with Ms. Todd after that time. (Ex. E Para 17).

Pl disputes 9, because it is false and ambigious. Nevertheless Dr. Deep never allegedly examined me or gave me the "Notice of Status and Rights". (Exhibit 3, Para.38).

10. Ms. Todd left the CPEP at 1:15 am, and was escorted to inpatient unit A6 by CPEP staff. (Ex. B, Bates 101; Ex.F, Para 10). Ms. Todd walked from the CPEP inpatient unit A6. She was not carried. (Ex. 1 at 272:18-22).

Pl disputes 10, because it is a lie that I allegedly "left CPEP at 1:15am and was escorted to inpatient unit by CPEP staff". Nevertheless on July 24, 2013 at 2:00, I was kidnapped from the closed PER waiting room by movant RN Sewdat Niranjan and escorted to A6. (Exhibit 3, Pargraphs 38, 39, 40, 41).

11. On July 24, 2013, at approximately 10:00a.m. Ms. Todd attended a Comprehensive Treatment Planning Meeting with Psychiatry Attending Dr. Nnamdi Odiah Social Wrker James Egielski, Registered Nurse Nancy Joseph,, Activity Therapist Leonato Graballo, and Nurse Practioner Sheung Chi Ng. (Ex. B, Bates 94). During this meeting, Dr. Odiah personally examined Ms. Todd and completed her admission assessment. The Affidavit

7

of Dr. Odiah is attached as <u>Exhibit H.</u> Ex. B, Bates 62-69; 92-95).

<u>Pl disputes 11</u>, because it is a lie that Dr. Nnamdi Odiah allegedly met with me on 07/24/2013 at 10:00am and allegedly examined "Ms. Todd and completed her admission assessment" because this never happened. Furthermore, I never met with Odiah or anyone else on 07/24/2013. (Exhibit 3, Paragraphs 38, 40, 41).

12. Dr. Odiah determined Ms. Todd had poor insight, judgment and impulse control. (Ex. B Bates 64). Dr. Odiah found she had serious medical problems and had not been following up with medical or mental health treatment; she was unable to follow up wth health issues, and she would require Visiting Nurse Services for discharge. (Ex. B, Bates 68, 75). Dr. Odiah diagnosed Ms. Todd with Psychosis NOS (Ex. B, Bates 74, 92; Ex.H Para 10). She was admitted to unit A6 due to poor self-care. <u>Id.</u> The treatment plan included vitals; a cardiac diet; Risperdal twice daily; Visiting Nurse Services prior to discharge, activities ss tolerated; and obtaining collaterral information. (Ex. B, Bates 74-75).

<u>Pl disputes 12</u>, because it false, ambigious and has no factual basis. Nevertheless Odiah never gave me a psychiatric or medical evaluation, and I never allegedly had any "serious medicla problems" because I was healthy mentally and physcally when I encountered him on the A6 psych ward on July 25, 2013. (Exhibit 3, Paragraphs 41, 42).

13. On July 24, 2013, Dr. Odiah executed form OMH 474 Page 2 for Ms. Todd's Emergency Admission pursuant to Section 9.39 of the Mental Hygiene Law. (Ex.B, Bates 09; Ex. H, Para.11). On this form, which is required under Section 9.39 of the Mental Hygiene Law to extend a patient's emergency admission beyond 48 hours. Dr. Odiah certified that he personally observed and examined Ms. Todd on July 24, 2013 at 10:00am. Dr. Odiah further certified that based on his examination and Ms. Todd's case history, there was reasonable cause

8

to believe Ms. Todd had a mental illness, which is likely to result in harm to herself or others, for which immediate care and treatment in a hospital was appropriate. (Ex. B, Bates 09; Ex.H, Para.11).

<u>Pl disputes 13</u> because it is false, ambigious and improbable. The fact is even though Dr. Odiah entered a false Sec. 9.39 MHL form in my EHC Med.Rec, fraudulently certifying me as allegedly mental ill, the opposite is true. Conversely I dispute the alleged conclusions about his false assertions about my alleged mental health status. which cannot be understood because I was mentally healthy during the Incident, (Exhibit 3, Para.40, 41).

14.   Ms. Todd was discharged from Elmhurst Hospital Center on August 5, 2013. (Ex. B. Bates 135).

<u>Pl objects to 14</u>, because it is vague and ambigious. Nevertheless, I was discharged from Elmhurst Hospital Center's A6 inpatient psychiatric unit on August 5, 2013.

15.   Ms. Todd's Elmhurst Hospital Center medical record does not indicate that Diane Stone, M.D. ever met, examined, evaluated, diagnosed or treated Ms todd. (Ex. B; Ex. L).

<u>Pl objects to 15</u>, because it is false because my Elmhurst Hospital Center medical record shows Dr. Diane Stone as my alleged admitting and attending physician from 07/23/2013 through 08/05/2013, See (Med. Rec, Bates stamped RA9, RA11 and RA216 through RA299); & (Exhibt 3, Paragraphs 35, 43).

16.   Ms. Todd admits that she never met or spoke with Dr. Diane Stone in Elmhurst Hospital Center's Emergency Department on July 123, 2013. (Ex. M, P1).

<u>Pl objects to 16</u> because it is vague and ambigious. Nevertheless, like Dr. Deep Lohia I was never provded any services by decedent Dr. Diane Stone, and I have consistently testified in the Court record to this fact. However, now that Diane Stone is dead the Administrator Emily

9

stone has now only admitted that the decedent never provided any services to me. which I have always disputed as to why the decedent made entries in my Med. Rec, and this should preclude summary judgment for Emily Stone. (Exhibit 3 Para 38, 41, 43).

17. Ms. Todd admits that she never met or spoke with Dr. Diane Stone at Elmhurst Hospital Center's inpatient unit A6 between July 24, 2013 and August 5, 2013. (Ex. M, Para 2.)

Pl objects to 17, because it is ambigious and misleading. Nevertheless, I never spoke with Dr. Diane Stone in Elmhurst Hospital Center A6 inpatient unit between July 24, 2013 and August 5, 2013 or at any other location at EHC for the duration of the Incident. (Exhibit 3, Paragraphs 35, 43).

18. Ms Todd admits that she was not examined, evaluated, diagnosed or treaed by Dr. Diane Stone at Elmhurst Hospital Center at an time betwen July 23, 2013 and August 5, 2013. (Ex. M, Para 5).

Pl's Opposition 18 - I am in opposition because it is vague and cannot bee understood. Notwithstanding, I have never been examined, evaluated diagnosed or treated by Dr. Diane Stone at EHC at any point in time. However, my EHC Med. Rec. fraudulently shows that she was allegedly involved with my admittance and treatment at EHC from July 23, 2013 to 08/05/2013. (Exhibit 3, Para. 35, 43).

19. Ms. Todd admits that she only learned of Dr. Diane's Stone's name after she reviewed her Elmhurst Hospita Medical Center records from July 23, 2013 to August 5, 2013. (Ex. M, Para 8).

Pl object to 19, because it is vague and open to misinterpretation. Nevertheless, I first learned of Dr. Stone's existence and name, when I reviewed my fraudulent EHC Medical Record in 2014.

20. Howard Gould M.D., the Deputy Director of Psychiatry at Elmhurst Hospital Center, has affirmed that it appears Dr. Stone's name was erroneously placed on the Face Sheet of Ms. Todd's Hospital chart by the admitting office. (Ex. L, Para10).

Pl objects to 20, because it is ambigious and cannot be understood. Nevertheless, it is my belief and and understanding that Dr. Gould testimony is a misguided attempt to win summary judgment for Administrator Emily Stone, Executor of Diane Stone's Estate in this matter. (Exhbit 3, Para. 43).

21. In his expert affirmation and expert report served on August 16, 2019, Psychiatrist Dr. Steven Fayer opined that Ms. Todd was appropriately evaluated and admitted to Elmhurst Hospital from July 23, 2013 to August 5, 2013, as the Elmhurst medical providers had reasonable cause to believe Ms. Todd had a mental illness for which immediate observation, care and treatment in a hospital was appropriate. (Ex.J, Para 19).

Pl object to 21, because it is ambigious and cannot be understood, because Dr. Steven Fayer has no personal knowledge of my actual mental status when the Hospital Employee Defendants illegally admitted and falsely imprisoned me at EHC, without substantive due process. Furthermore, he has never met me, or given me a psychiatric evaluation and inexplicably based his opinion solely on the disputed and fraudulent entries in my EHC Med. Rec. (Exhbit 3 Para.43).

Dated: June 9, 2020
Rego Park, New York

I declare under penalty of purjury that the foregoing is true and correct.

Sworn to before me this

15 day of June 2020

Notary Public

FRANZ POPPE
Notary Public - State of New York
NO. 01PO4693438
Qualified in Queens County
My Commission Expires May 31, 2023

Maxine A. Todd

<u>Copy via Priority Mail to:</u>
Counsel to Stone, Dompre, Lohia, Lorico,
 Odiah, Niranjan and Zhu
Heidell, Pittoni, Murphy & Bach
Ms. Gabrielle Apfel, Esq.,
Ms. Austa Devlin, Esq.
99 Park Avenue
New York, New York 10016

<u>Copy via Priority Mail to:</u>
Counsel to Defendants, Baldanza,
 Berlingerio and Vlack
Ms. Maria Fernanda Decastro, Esq.
The City of New York Law Dept.
100 Church Street
New York, New York 10007