UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

MAXINE A. TODD,

                                        Plaintiff,

                    v.

NEW YORK CITY HEALTH AND HOSPITALS
CORPORATION, OFFICE OF LEGAL AFFAIRS;
CLAIMS DIVISION; EMILY STONE, AS EXECUTOR
OF DIANE STONE'S ESTATE; DEEP LOHIA, MD,
LIC # 268559; NNAMDI ODIAH MD, LIC # 260378;
ALEX DOMPREH, NP; LILY ZOU, RN; MANUELA
LORICO, RN; JOHN DOE, RN; PARK CITY 3 & 4
APARTMENTS, INC.; LOUIS KRAMBERG, PRES.
OF CO-OP BOARD; CHANDRA JAIN, CO-OP MGR.;
P.O. BERLINGERIO, SHIELD #2501; P.O.
MARCELLA VCLAK, SHIELD # 951423;
FRANCISCO BALDANZA, NYC FIRE DEPT EMT,

                                        Defendants.

---

**MEMORANDUM AND ORDER**

16-CV-2124 (LDH)(LB)

---

LASHANN DEARCY HALL, United States District Judge:

Plaintiff Maxine A. Todd, proceeding pro se, brings the instant action against Park City 3 & 4 Apartments, Inc., Louis Kramberg, and Chandra Jain (together, "Park City Defendants"), asserting claims for selective apartment inspections under 42 U.S.C. § 1981; and Sergeant Gianfranco Berlingerio, Officer Marcella Vlack, and Emergency Medical Technician ("EMT") Francesco Baldanza (together, "City Defendants") asserting claims for unlawful entry and unreasonable seizure under 42 U.S.C. § 1983.  Defendants move pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment to dismiss the amended complaint in its entirety.

# UNDISPUTED FACTS[1]

Plaintiff owns shares allocated to Apartment 4k in Park City 3 & 4 Apartments, Inc ("Park City"), a cooperative apartment building complex.  (Pl.'s Park City 56.1 Statement Opp'n ("Pl.'s Park City 56.1 Opp'n") ¶ 1, ECF No. 211 at 9-20.[2])  According to Plaintiff, she is one of the few Black individuals who owns, rents, or resides at Park City.  (*Id.* ¶ 8.)

All Park City residents are subject to certain inspections, such as those required to ensure compliance with local laws concerning smoke detectors, carbon monoxide detectors, lead-based paint hazards, bed bugs, and allergen hazards such as mold.  (A.G. Chancellor III Decl. Supp. 56.1 Statement ("Chancellor Decl."), Ex. 3  ¶ 7, ECF No. 195-2.)  According to Plaintiff, her apartment was subject to special inspections that other residents were not subjected to.  (Pl.'s Park City 56.1 Opp'n ¶ 4.)  For example, building employees entered her apartment for annual inspections to test her smoke detector and carbon monoxide detector between 2007 and 2009. (Chancellor Decl., Ex 1 at 22:16–23:22, ECF No 195-2.)  Plaintiff never heard or saw inspections happening in her white neighbors' apartments after her inspections occurred, even though all apartments on her floor share a small vestibule.  (Pl.'s Park City 56.1 Opp'n ¶ 4.)

On July 23, 2013, at approximately 11:28 a.m., an individual called 911 and reported that there was a "water leak in [Plaintiff's apartment]," that "the tenant is a mentally disturbed person refusing to open door," that there were no weapons, and that the tenant was "not violent." (Decastro Decl. Supp. City Defs' Mot. Summ. J. ("Decastro Decl."), Ex. E at D000010, ECF 200-5.)  A few minutes later, Officers Vlack and Berlingerio received a radio run indicating that an emotionally disturbed person had "barricaded" herself in her apartment and was refusing to

---

[1] The following facts are taken from the parties' statements of material facts pursuant to Local Rule 56.1 and annexed affidavits and exhibits.  Unless otherwise noted, the facts are undisputed.
[2] Pagination refers to the page numbers assigned by the Court's ECF system.

grant the Fire Department of the City of New York ("FDNY") access.  (City Defs.' Rule 56.1

Statement Mat. Facts ("City Defs.' 56.1") ¶¶ 9-10, ECF No. 199.)  When Officers Vlack and

Berlingerio arrived on the fourth floor of Plaintiff's apartment building, they were met by FDNY

firefighters and an individual who identified himself as the building's superintendent.  (*Id.* ¶¶

12–13.)  At some point, EMT Baldanza was also dispatched to Plaintiff's apartment building.

(*See id.* ¶ 16–17.)  The superintendent informed Officers Vlack and Berlingerio that there was a

condition inside the building that required accessing Plaintiff's apartment in order to address a

potential fire hazard, and Plaintiff was refusing access to her apartment.  (*Id.* ¶ 14.)  At some

point, Plaintiff opened the door to her apartment and allowed Officers Vlack and Berlingerio to

enter.  (*Id.* ¶ 20.)  Plaintiff states that she was "happy" that New York City Police Department

("NYPD") officers entered her home.  (Pl.'s Opp'n City Defs.' 56.1 ("Pl.'s City Defs.' 56.1

Opp'n") ¶ 21, ECF No. 248 at 30-46.)

City Defendants' version of what happened after City Defendants entered the apartment

is largely disputed by Plaintiff.[3]  City Defendants state that Plaintiff appeared frail or

malnourished, disheveled, ungroomed, and agitated, and that her apartment appeared dusty and

unkept.  (City Defs.' 56.1 ¶¶ 22–23.)  Plaintiff was "fixated" on the officers, and stared at Officer

Vlack with "wide protruding eyes and pursed lips."  (*Id.* ¶ 23.)  Plaintiff stated several times,

"I'm going to get you."  (*Id.* ¶ 29.)  At some point, Plaintiff positioned herself within the

---

[3] Plaintiff's 56.1 statement disputes many of Defendant's statements of fact, but does not cite to admissible evidence.  Rather, Plaintiff's version of events is contained in an affidavit she attached to her opposition papers to City Defendants' motion.  (Aff. Pl. Todd Opp. Mot. Summ J. ("Todd Aff."), ECF No. 248 at 49-60.)  City Defendants urge the Court to deem most of their facts admitted because Plaintiff failed to cite to admissible evidence in the record in her 56.1 statement in contravention of the local rules.  (City Defs.' Mem. L. Supp. Mot. Summ. J. ("City Defs.' Mem.") 3–5, ECF No. 244.)  However, "a district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules" and may exercise that discretion, on behalf of a *pro se* party, to go beyond the evidence cited in the Rule 56.1 statements and "conduct an assiduous review of the record."  *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001).  Accordingly, notwithstanding Plaintiff's noncompliance with Local Civil Rule 56.1(b), the Court has exercised it discretion and considered all admissible evidence in support of Plaintiff's contentions.

apartment such as to prevent anyone from moving further inside to inspect for hazards.  (*Id.* ¶ 28.)  At some later point, Plaintiff attempted to barricade herself in the bathroom.  (*Id.* ¶ 37.)  Plaintiff became combative when she was informed she would need to be taken to the hospital for an evaluation.  (*Id.* ¶ 40.)  At some point, Office Vlack handcuffed Plaintiff, after which point Plaintiff became verbally and physically abusive towards EMT Baldanza.  (*Id.* ¶¶ 41–42.)

According to Plaintiff, her apartment was "spotless," she was wearing clean clothes, she was not malnourished, and she had clean, combed hair.  (Aff. Pl. Todd. Opp. Mot. Summ J., ("Todd Aff.") ¶¶  5(ii)-(iii), 6(iii), ECF No. 248 at 50-53.)  Plaintiff disputes that she stared at or threatened Officer Vlack.  (*Id.* ¶¶ 5(iv)-(v).)  Moreover, Plaintiff states that she was not combative or physically abusive towards EMT Baldanza.  (*Id.* ¶¶ 6(v), 7(vi).)  Plaintiff further asserts that she did not attempt to barricade herself in her apartment.  (*Id.* ¶ 7(vi).)

It is undisputed that at some point Plaintiff was escorted out of her apartment to an ambulance and transported to the hospital by EMT Baldanza and Officer Vlack.  (City Defs.' 56.1 ¶¶ 43, 46.)  City Defendants state, and Plaintiff disputes, that during the ride to the hospital, Plaintiff continued to state she was going to "get" Officer Vlack and continued to stare at her. (*Id.* ¶¶ 44, 47.)

## STANDARD OF REVIEW

Summary judgment must be granted when there is "no genuine dispute as to any material fact and the movant[s] are entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247–48 (1986).  A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.  The movants bear the initial burden of demonstrating the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330–31 (1986); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004).  Where the

non-movant bears the burden of proof at trial, the movants' initial burden at summary judgment can be met by pointing to a lack of evidence supporting the non-movant's claim. *Celotex Corp.*, 477 U.S. at 325. Once the movants meet their initial burden, the non-movant may defeat summary judgment only by producing evidence of specific facts that raise a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *see also Anderson*, 477 U.S. at 250; *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002). The Court is to believe the evidence of the non-movant and draw all justifiable inferences in his favor, *Anderson*, 477 U.S. at 255, but the non-movant must still do more than merely assert conclusions that are unsupported by arguments or facts. *Bellsouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996).

"It is well established that the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and emphasis omitted), including when facing a summary judgment motion, *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003). Nevertheless, the "application of this different standard does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Id*. at 50 (internal quotation marks omitted).

## DISCUSSION

### I.  Park City Defendants

Section 1981 provides:

> All persons within the jurisdiction of the United States shall have the same right in
> every State and Territory to make and enforce contracts, to sue, be parties, give
> evidence, and to the full and equal benefit of all laws and proceedings for the
> security of persons and property as is enjoyed by white citizens, and shall be subject
> to like punishment, pains, penalties, taxes, licenses, and exactions of every kind,
> and to no other.

42 U.S.C. § 1981(a).  In order to establish a § 1981 violation, a plaintiff must show that (1) the defendant discriminated against her on the basis of race; (2) that the discrimination was intentional; and (3) that the discrimination was a substantial or motivating factor for the defendants' actions.  *Tolbert v. Queens Coll.*, 242 F.3d 58, 69 (2d Cir. 2001) (internal citations and quotations omitted).  Park City Defendants argue that Plaintiff has failed to adduce any evidence that she was discriminated against with respect to apartment inspections due to her race.  (Park City Defs.' Mem. L. Supp. Mot. Summ. J. ("Park City Defs.' Mem.") 5–7, ECF No. 229.)  The Court agrees.

Plaintiff maintains that she was subject to special inspections, or more frequent inspections than white residents.  (Pl.'s Park City 56.1 Opp'n ¶ 4.)  In support of her claim, Plaintiff states that she never heard or saw inspections happening in her three white neighbors' apartments after inspections of her apartment occurred.  (*Id.*)  However, Plaintiff has adduced no other evidence to support her claim.  Plaintiff could have, for example, adduced deposition testimony or other sworn statements from neighbors attesting to the fact that they were not subject to home inspections.  Likewise, Plaintiff could have provided documentary evidence from the cooperative's management company setting out when and at which apartment inspections were conducted.  Plaintiff did not.  Ultimately, Plaintiff's contention that she was subject to selective inspections is wholly speculative.  Neither speculation nor conclusory statements are sufficient to defeat a motion for summary judgment.  *McPherson v. New York City Dep't of Educ.*, 457 F.3d 211  n.4 (2d Cir. 2006); ("[S]peculation alone is insufficient to defeat a motion for summary judgment."); *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002) ("[R]eliance upon conclusory statements or mere allegations is not sufficient to defeat

a summary judgment motion.").  On these grounds, Park City Defendants are entitled to summary judgment on Plaintiff's § 1981 claim.

## II.     City Defendants

### A.     Warrantless Entry

"[W]arrantless entries into the home are presumptively unreasonable." *United States v. Fields*, 113 F.3d 313, 322 (2d Cir. 1997).  However, "[u]nder the Fourth Amendment's consent exception, warrantless entry . . . [is] permissible if the authorities have obtained the voluntary consent of a person authorized to grant such consent." *United States v. Guerrero*, 813 F.3d 462, 467 (2d Cir. 2016) (citation and quotation omitted).  City Defendants argue that it cannot be genuinely disputed that Plaintiff consented to their entry into her apartment.  (Mem. L. Supp. City Defs.' Mot. Summ. J. ("City Defs.' Mem.") 5, ECF No. 244.)  The Court agrees.

In her opposition to City Defendants' 56.1 statement, Plaintiff "generally opposes" the fact she opened her apartment door and allowed Officer's Vlack and Berlingerio to enter.  (Pl.'s City Defs.' 56.1 Opp'n ¶  20.)  However, Plaintiff's position is contradicted by the facts in the record.  In an affidavit previously filed by Plaintiff, she affirmed "I opened my door," to the City Defendants and I was "happy to see them."  (Decastro Decl., Ex. H at 12 ; Pl.'s City Defs. 56.1 ¶ 21.)  Plaintiff also previously affirmed "the fact is on 7/23/2013 [] I allowed City Defendants into my home."  (Decastro Decl., Ex. H at 18.)  In other words, the evidence supports a finding that Plaintiff consented to City Defendants' entry into her apartment.  Accordingly, there is no genuine dispute of material fact as to whether Plaintiff consented to entry into her home and defendants are entitled to summary judgment on Plaintiff's  warrantless entry claim.

### B.     Unreasonable Seizure

The Fourth Amendment protects against unreasonable searches and seizures, including where the seizure is due to an individual's mental illness.  *Myers v. Patterson*, 819 F.3d 625, 632

(2d Cir. 2016) ("[Fourth Amendment] protection adheres whether the seizure is for purposes of law enforcement or due to an individual's mental illness.").  To handcuff and detain an individual for mental health reasons, an officer must have "probable cause to believe that the person presented a risk of harm to [her]self or others."  *Id.* (quoting *Kerman v. City of New York,* 261 F.3d 229, 237 (2d Cir. 2001)); *see also Green v. City of New York*, 465 F.3d 65, 83 (2d Cir. 2006) ("[I]n order to constitutionally seize a person to transport him to a hospital, the person must be dangerous, presumably to himself or others); N.Y. Mental Hyg. Law § 9.41 ("Any . . . police officer . . . may take into custody any person who appears to be mentally ill and is conducting herself in a manner which is likely to result in serious harm to the person or others.").  For a mental health seizure, the law requires only "a probability or substantial chance of dangerous behavior, not an actual showing of such behavior."  *Bryant v. Steele*, 462 F. Supp. 3d 249, 260 (E.D.N.Y. 2020); *Mizrahi v. City of New York*, No. 15-CV-6084, 2018 WL 3848917, at *20 (E.D.N.Y. Aug. 13, 2018) (collecting cases).  To determine whether probable cause existed to justify a mental health seizure, courts must look to "the specific observations and information available" at the time of the seizure.  *Myers*, 819 F.3d at 633.  City Defendants argue that given the facts and circumstances at the time of the arrest, there was probable cause to believe that Plaintiff was conducting herself in a manner likely to result in serious harm to herself or others.  (City Defs.' Mem. 8–11.)  The Court disagrees.

Critically, the "harm to self or others" standard is not met by evidence suggesting merely that the person is emotionally disturbed, mentally unwell, paranoid, or espousing conspiracy theories.  *See Myers*, 819 F.3d at 634 ("A person may be annoyed, uncooperative, and irrational without presenting a danger to herself or of violence to others."); *Bryant*, 2020 WL 2797606, at *9 (E.D.N.Y. May 22, 2020) (denying summary judgment on probable cause grounds where it

was undisputed that plaintiff called the police and claimed that "unknown Haitians and Jamaicans" were threatening to kill him, that unknown people were surveilling him, and that he had multiple firearms); *Greenaway v. County of Nassau*, 97 F. Supp. 3d 225, 234 (E.D.N.Y. 2015) (finding that defendants "fail[ed] to show that engaging in 'bizarre and unreasonable' behavior, including stripping naked and rubbing paint on oneself inside one's own residence, is 'likely to result in serious harm to the person or others,'" even though plaintiff made "gestures that some officers interpreted as 'threatening'" (quoting N.Y. Mental Hyg. Law § 9.41); *Guan v. City of New York*, No. 18-CV-2417, 2020 WL 6688855, at *10 (S.D.N.Y. Sept. 18, 2020) (denying summary judgment on probable cause grounds where defendants provided evidence that plaintiff was mentally unstable, but provided no evidence that plaintiff manifested homicidal or other violent behavior placing others at risk of serious physical harm). With this foundational principle in mind, the Court turns to the facts here.

Plaintiff disputes City Defendants' accounts of what transpired in her apartment, and has attached a sworn affidavit with her account of the events. (*See* Todd Aff.) That alone is enough to create a triable issue of fact. However, even if the Court accepts City Defendants' account (which is not the standard on summary judgment), it is insufficient to warrant a grant of summary judgment. *See Greenaway*, 97 F. Supp. 3d at 234 (E.D.N.Y. 2015) (employing same analytical approach).

To start, Defendants make much of Plaintiff's "repeated threats." (City Defs.' Mem. 10.) According to Officer Vlack, Plaintiff stated several times "I'm going to get you," which, coupled with Plaintiff's stares and wide-eyed expressions, caused Officer Vlack to fear for her safety. (Decastro Decl., Ex F. ¶¶ 20-21, 23, 29, ECF No. 200-6.) However there is no evidence that Plaintiff had any access to anything that could be used as a weapon or physically threatened

Officer Vlack in any way.  *See* 97 F. Supp. 3d at 234 (finding no probable cause even though plaintiff made "gestures that some officers interpreted as 'threatening'").  Moreover, Plaintiff was separately described as extremely frail or malnourished by Officer Berlingerio, (Decastro Decl., Ex. G ¶ 14, ECF No. 200-7), calling into question whether Plaintiff's "stares" and vague potential threats support a finding of probable cause to believe that she presented a risk of harm to others.

Next, EMT Baldanza stated that "at some point while the plaintiff was restrained she became verbally and physically abusive towards me." (Decastro Decl., Ex. L ¶ 26, ECF No. 200-12.)  There are no other facts or statements by EMT Baldanza about the abuse nor any other evidence in the record regarding this abuse.  What did Plaintiff say?  What was she doing that was "physically abusive," particularly given that she was already handcuffed?  Was she physically threatening before the handcuffs were placed on her or only afterwards?

Finally, City Defendants' evidence regarding the fire hazard is wholly insufficient to support their motion for summary judgment.  City Defendants argue that they were concerned for Plaintiff's safety because of "the fact that plaintiff continued to deny maintenance workers and emergency crews access to her bathroom, where the leak creating the fire hazard was located."  (City Defs.' Mem. 9.)  This "fact" is not actually supported by the record.  The individual who called 911 reported that there was a "water leak" in Plaintiff's apartment. (Decastro Decl., Ex. E at D000010.)  The superintendent of the building informed a police officer that a condition inside the building required accessing Plaintiff's apartment in order to address a "potential fire hazard," and Plaintiff was refusing access to her apartment.  (Pl.'s City Defs.' 56.1 Opp'n ¶ 14.)  There is no evidence that law enforcement had any information about a

purported fire hazard that could reasonably lead them to believe it could harm Plaintiff or others, *i.e.*, any indication that the water leak might cause any harm to electrical wiring.

Moreover, even assuming a fire hazard, the evidence does not support any argument that Plaintiff actually prevented law enforcement from accessing the hazard.  As discussed, Plaintiff consented to the officers' entry into her apartment.  City Defendants assert that, at some point, the "frail" Plaintiff positioned herself within the apartment such as to prevent anyone from moving further inside to inspect for hazards.  (City Defs.' 56.1 ¶ 28.)  Even if that were true, it is not clear that anyone was actually prevented from accessing any hazard.  Moreover, according to EMT Baldanza, Plaintiff "attempted" to barricade herself in the bathroom.  (*Id.* ¶ 37; Decastro Decl., Ex. L ¶¶ 22, 27.)  But, there is no evidence that she actually barricaded herself in the bathroom or what the "attempt" entailed.  City Defendants' effort to spin these facts in a definitive narrative about Plaintiff preventing law enforcement from accessing a known fire hazard is simply unpersuasive and belied by the, at best, ambiguous record.  And, on a motion for summary judgment, all ambiguities must be resolved in favor of the non-movant.  *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998).

Against this factual backdrop, City Defendants' cited caselaw is unhelpful.  They almost exclusively rely on *Quon v. Henry*, No. 14-CV-9909, 2017 WL 1406279 (S.D.N.Y. Mar. 27, 2017).  At first blush, the facts in *Quon* seem potentially analogous to City Defendants' account of events.  There, then-District Judge Sullivan found that there was probable cause to detain and hospitalize the plaintiff because:

> (1) Quon barricaded himself in his apartment rather than allow the firefighters in to inspect a leak, (2) he was dressed only in a pair of briefs despite having ample time to don clothing after the firefighters announced themselves, (3) he made bizarre and incoherent remarks both before and after his door was removed, (4) he acted aggressively and irrationally, (5) he menaced at least two firefighters with a metal bar, (6) he gave nonresponsive answers to Officer Grant's standard evaluative

questions, (7) he appeared to live alone in a dangerously cluttered apartment, and (8) he told the EMTs that he was stressed and paranoid.

*Id.* at *8.  However, on closer inspection, the facts of *Quon* could not be more different than the case at bar.  There, the plaintiff had actually barricaded himself in the apartment with a fire hazard and law enforcement, after attempting to open the door, ultimately were forced to remove the door from its hinges.  *Id.* at *3.  There, the evidence of the fire hazard was well-established— law enforcement investigated the reported leak in another apartment, saw water flowing down from the ceiling and into some of the apartment's electrical wiring, and concluded that the leak posed a fire hazard.  *Id.* at *2.  And, the plaintiff in *Quon* also acted aggressively and irrationally, evidenced by him menacing at least two firefighters with a metal bar.  *Id.* at *8.  Accordingly, the evidence there supported a finding that there was a substantial chance of harm to plaintiff or others.  *Id.*  The same cannot be said here.  A genuine dispute of material fact remains.

### C.    Qualified Immunity

City Defendants argue that they are entitled to qualified immunity on the unreasonable seizure claim.  (City Defs.' Mem. 14–15.)  The Court disagrees.

Qualified immunity shields a government officer from liability under § 1983 "if he had 'arguable probable cause' to arrest the plaintiff."  *Myers*, 819 F.3d at 632 (citation omitted). "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met."  *Id.* at 633 (quoting *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004)); *Mara v. Rilling*, 921 F.3d 48, 73 n.16 (2d Cir. 2019).

For the reasons set forth above, there are disputed issues of material fact as to whether there was arguable probable cause to support the seizure.  Namely, there are disputes as to whether an officer of reasonable competence would have believed that Plaintiff was a likely a

12

danger to herself or others given that she had no weapons, there was no evidence of self-harm, she did not actually barricade herself in with any fire hazard, and evidence that she was "physically abusive" is ambiguous at best.  Accordingly, qualified immunity is not warranted.

**CONCLUSION**

For the foregoing reasons, Park City Defendants' motion for summary judgment is GRANTED and the § 1981 claim against them is dismissed.  City Defendants' motion for summary judgment is GRANTED in part and DENIED in part and the § 1983 claim for warrantless entry is dismissed.  The § 1983 claim for unreasonable seizure remains.

SO ORDERED.

Dated: Brooklyn, New York      /s/ LDH
      March 31, 2021      LASHANN DEARCY HALL
          United States District Judge