UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MAXINE A. TODD,<br><br>        Plaintiff,<br><br>   v.<br><br>NEW YORK CITY HEALTH AND HOSPITALS CORPORATION, OFFICE OF LEGAL AFFAIRS, CLAIMS DIVISION; EMILY STONE, AS EXECUTOR OF DIANE STONE'S ESTATE; DEEP LOHIA, MD, LIC # 268559; NNAMDI ODIAH MD, LIC # 260378; ALEX DOMPREH, NP; LILY ZHU, RN; MANUELA LORICO, RN; SEWDAT NIRANJAN, RN; PARK CITY 3 & 4 APARTMENTS, INC.; LOUIS KRAMBERG, PRES. OF CO-OP BOARD; CHANDRA JAIN, CO-OP MGR.; P.O. BERLINGERIO, SHIELD #2501; P.O. MARCELLA VCLAK, SHIELD # 951423; FRANCISCO BALDANZA, NYC FIRE DEPT EMT,<br><br>        Defendants. | **MEMORANDUM AND ORDER**<br>16-CV-2124 (LDH)(LB) |

LASHANN DEARCY HALL, United States District Judge:

  Plaintiff Maxine A. Todd, proceeding *pro se*, brings the instant action against New York City Health and Hospitals Corporation employees Deep Lohia, MD, Nnamdi Odiah, MD, Alex Dompreh, NP, Lily Zhu, RN, Manuela Lorico, RN, Sewdat Niranjan, RN, and Emily Stone, as Executor of Diane Stone's Estate, asserting claims for violations of her Fourth Amendment right to be free from unreasonable searches and seizures and her Fourteenth Amendment procedural and substantive due process rights under 42 U.S.C. § 1983. Defendants move pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment to dismiss the amended complaint in its entirety.

1

## UNDISPUTED FACTS[1]

On July 23, 2013, Plaintiff was transported to the Elmhurst Hospital Center's Psychiatric Emergency Department by Emergency Medical Services. (Defs.' 56.1 Statement ("Defs.' 56.1") ¶ 1, ECF No. 255.) Plaintiff asserts that her entire hospital record is "fraudulent," and, accordingly, unless otherwise noted, all facts regarding her medical care are disputed.[2] (Pl.'s Opp'n Defs.' 56.1 Statement ("Pl.'s 56.1 Opp'n") at 25 ¶ 2, ECF No. 260.[3])

On the day Plaintiff arrived at Elmhurst Hospital, she was examined and interviewed by Nurses Zhu and Dompreh, and a social worker, in the emergency department. (Defs.' 56.1 ¶¶ 2–21.) In these initial examinations, Plaintiff reported a prior suicide attempt in 2000 and a history of depression. (*Id.* ¶¶ 6, 20–21.) The nurses and social worker described Plaintiff as being paranoid and delusional. (*Id.*) For example, according to the social worker, Plaintiff reported that someone was using bathroom pipes to release toxins into her apartment, and that she believed she was the victim of organized gangs and stalking. (*Id.* ¶ 21.) Later that afternoon, Plaintiff was examined by Dr. Lohia, an attending physician, who had reviewed the records from Nurse Zhu, Nurse Dompreh, and the social worker. (Apfel Decl. Sup. Def.'s Mot. Sum. J. ("Apfel Decl."), Ex. E ¶¶ 8–11, ECF No. 254-3.) After reviewing the medical record and conducting his own evaluation, Dr. Lohia diagnosed Plaintiff with "psychosis not otherwise specified." (*Id.* ¶¶ 4, 8–12.) He concluded that Plaintiff had a mental illness that required immediate treatment in a mental hospital and was likely to result in serious harm to herself or

---

[1] The following facts are taken from the parties' statements of material facts pursuant to Local Rule 56.1 and annexed affidavits and exhibits. Unless otherwise noted, the facts are undisputed. The Court assumes the parties' familiarity with the relevant facts set forth in the Court's March 31, 2021 memorandum and order. (ECF No. 267.)

[2] Plaintiff does not cite to any admissible evidence on this point other than her own recollection about her medical care. (*See generally* Pl.'s 56.1 Opp'n at 24–33.)

[3] Pagination refers to the pages assigned by the Court's ECF system. Paragraph numbers refer to Plaintiff's responses to the corresponding paragraphs in Defendants' 56.1 Statement. Thus, a citation to "25 ¶ 2" refers to what Plaintiff identifies in her 56.1 Opposition as "Opposition to 2" on ECF page 25.

others. (*Id.* ¶¶ 12–13.) Dr. Lohia further determined that Plaintiff should be admitted for observation and treatment. (*Id.* ¶ 13.) Accordingly, he executed Form OMH 474 and provided Plaintiff with a Notice of Status and Rights for Emergency Admission (the "Notice").[4] (*Id.* ¶¶ 13, 15.) Dr. Lohia signed the form attesting that the Notice had been provided to Plaintiff. (*Id.* ¶ 15.) Subsequently, Plaintiff was prescribed anti-psychotic and anti-anxiety medication. (Defs.' 56.1 ¶ 32.) Plaintiff was also diagnosed with hypertension and accepted medication for her elevated blood pressure. (*Id.* ¶¶ 4–5, 14, 18.) This fact is undisputed. (Pl.'s 56.1 Opp'n at 25 ¶¶ 4–5, 12–14, 18, 26; *see also* Apfel Decl., Ex. I at 202:22–204:9, ECF No. 254-7; Apfel Decl., Ex. B at 0048.) Later that night, Plaintiff was escorted to a psychiatric inpatient unit. (Defs.' 56.1 ¶ 36.)

Thereafter, Plaintiff signed several forms, including a "General Consent for Treatment Form," and the Patient's Bill of Rights, both of which bear Plaintiff's signature. (*Id.* ¶¶ 43, 46; Apfel Decl., Ex. B at 00143–44, ECF No. 259-2.) Plaintiff asserts her signature on these forms was forged by Nurse Lorico, who also signed the forms. (Pl.'s 56.1 Opp'n at 30 ¶ 43; Def's 56.1 ¶¶ 43–47.)

On July 24, 2013, Dr. Odiah examined Plaintiff and likewise diagnosed her with "psychosis not otherwise specified." (Defs.' 56.1 ¶¶ 50–53.) Having determined that there was a reasonable cause to believe that Plaintiff had a mental illness likely to result in harm to herself or others, Dr. Odiah executed Form OMH 474 to extend Plaintiff's admission at Elmhurst Hospital beyond 48 hours. (*Id.* ¶ 54.) Plaintiff remained at Elmhurst Hospital until August 5,

---

[4] Form OMH is the New York Office of Mental Health form for Emergency Admission under § 9.39 of New York's Mental Hygiene Law. (Apfel Decl., Ex. B at 0008–09, ECF No. 259-2.) Physicians are to complete this form when admitting an individual involuntarily. (*Id.*) Similarly, the Notice is a § 9.39 Emergency Admission document that must be provided to an individual upon his or her involuntary admission to a hospital. (*Id.* at 0010.) The Notice informs the individual of his or her rights and provides contact information for the Mental Hygiene Legal Service. (*Id.*)

2013, or for 13 days, until such time when Dr. Odiah determined she was stable. (*Id.* ¶¶ 76, 78.) During Plaintiff's time at Elmhurst Hospital, her medical record reflects that she received mental health treatment and treatment for her hypertension. (*Id.* ¶¶ 50–74.)

## STANDARD OF REVIEW

Summary judgment must be granted when there is "no genuine dispute as to any material fact and the movant[s] are entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The movants bear the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330–31 (1986); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004). Where the non-movant bears the burden of proof at trial, the movants' initial burden at summary judgment can be met by pointing to a lack of evidence supporting the non-movant's claim. *Celotex Corp.*, 477 U.S. at 325. Once the movants meet their initial burden, the non-movant may defeat summary judgment only by producing evidence of specific facts that raise a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *see also Anderson*, 477 U.S. at 250; *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002). The Court is to believe the evidence of the non-movant and draw all justifiable inferences in her favor, *Anderson*, 477 U.S. at 255, but the non-movant must still do more than merely assert conclusions that are unsupported by arguments or facts. *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996).

"It is well established that the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and emphasis omitted), including when facing a summary judgment motion, *Jorgensen v. Epic/Sony Records*, 351 F.3d

4

46, 50 (2d Cir. 2003). Nevertheless, the "application of this different standard does not relieve plaintiff of [her] duty to meet the requirements necessary to defeat a motion for summary judgment." *Id*. at 50 (internal quotation marks omitted).

## DISCUSSION

To prevail on a claim under § 1983, a plaintiff must show that the conduct complained of was "committed by a person acting under color of state law," and that it "deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994). "Section 1983 itself creates no substantive rights[,] [but] provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). Here, Plaintiff alleges violations of her Fourth and Fourteenth Amendment rights.

### I. Fourteenth Amendment Due Process Claims

Under the Fourteenth Amendment, no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Here, Plaintiff asserts violations of both her procedural and substantive due process rights.

### A. Procedural Due Process

"In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). "[T]o determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate." *Id.* at 126. New York's statutory scheme governing involuntary commitments, codified in its Mental Hygiene Law ("MHL"), has been held facially sufficient to meet the requirements of procedural due process. *Rodriguez v. City of New York*, 72 F.3d 1051,

1062–63 (2d Cir. 1995); *Project Release v. Prevost*, 722 F.2d 960, 971 (2d Cir. 1983) ("[H]aving considered the New York M.H.L. in its entirety, our inquiry leads us to conclude that the statute does meet the minimum facial requirements of due process—both substantive and procedural."). In other words, where defendants comply with the MHL, a procedural due process claim cannot lie. *See Mawhirt v. Ahmed,* 8 Fed. App'x 125, 126–27 (2d Cir. 2001) (summary order) (affirming district court grant of summary judgment dismissing federal constitutional claims arising from involuntary civil commitment despite plaintiff's dispute of medical and judicial conclusions that led to such commitment because "he raised no genuine issue of material fact as to whether he had been afforded procedural due process under the New York Mental Hygiene Law"); *Capellupo v. Nassau Health Care Corp.*, No. 06-CV-4922 JFB ETB, 2009 WL 1705749, at *12 (E.D.N.Y. June 16, 2009) (granting summary judgment to defendants on procedural due process claim where defendants complied with the requirements of the MHL).

Pursuant to MHL § 9.39, a patient may be involuntarily committed to a hospital for up to 15 days if they have a mental illness for which "immediate observation, care, and treatment in a hospital is appropriate and which is likely to result in serious harm to [her]self or others." N.Y.M.H.L § 9.39(a). That said, a patient is to be admitted to a hospital involuntarily pursuant to § 9.39 "only if a staff physician of the hospital upon examination of such person finds that such person qualifies under the requirements of [§ 9.39]." *Id*. § 9.39(a). Moreover, a person may not be retained for more than 48 hours unless another physician, who is a member of the hospital's psychiatric staff, confirms that the patient qualifies under the requirements of § 9.39(a). *Id*. MHL § 9.39 further provides that the individual being admitted must be provided with a written notice of their status and rights as a patient under this section. *Id*. Defendants argue that they are entitled to summary judgment on Plaintiff's procedural due process claim as

her commitment comported with the procedural requirements of MHL § 9.39. (Defs.' Mem. Sup. Mot. Sum. J. ("Defs.' Mem.") 13–15, ECF No. 257.) The Court agrees.

Upon arrival at Elmhurst Hospital on July 23, 2013, Plaintiff was examined by Dr. Lohia, an attending physician. (Apfel Decl., Ex. E ¶¶ 8–10.) Based on his review of Plaintiff's medical record, and his own evaluation, Dr. Lohia diagnosed Plaintiff with "psychosis not otherwise specified," hypertension, poor insight, and paranoid delusions. (*Id.* ¶ 12.) Dr. Lohia then executed Form OMH 474 for Plaintiff's emergency admission pursuant to MHL § 9.39. (*Id.* ¶ 13; Apfel Decl., Ex. B at 0008.) According to the record and Dr. Lohia's testimony, Dr. Lohia provided Plaintiff with the Notice on July 23, 2013, and signed the form attesting that such notice had been provided to Plaintiff. (Apfel Decl., Ex. E ¶ 15; Apfel Decl., Ex. B at 0010.) Then, within 48 hours of Plaintiff's admission, on July 24, 2013, Dr. Odiah, a psychiatry attending at Elmhurst, likewise diagnosed Plaintiff with "psychosis not otherwise specified." (Defs.' 56.1 ¶¶ 50–53.) He thereafter determined that there was reasonable cause to believe that Plaintiff had a mental illness requiring admission and executed Form OMH 474 to extend Plaintiff's admission at Elmhurst Hospital beyond 48 hours. (*Id.* ¶ 54.) On these facts, Defendants' conduct satisfies the procedural due process requirements of MHL § 9.39.

Plaintiff seeks to defeat Defendants' motion for summary judgment on this claim by disputing that: (i) Dr. Lohia examined her on July 23, 2013; (ii) Dr. Odiah performed the psychiatric evaluation required by MHL § 9.39; and (iii) she received the Notice. (Pl.'s Opp'n Defs.' Mot. Sum. J. ("Pl.'s Opp'n") at 6, 7, 12–13, ECF No. 260; Pl.'s 56.1 Opp'n at 28 ¶¶ 27–31.) Plaintiff is correct that these factual disputes, if supported, could provide a basis to deny summary judgment on her procedural due process claim. However, Plaintiff's purported factual disputes amount to no more than naked denials that are insufficient on a motion for summary

7

judgment. In contrast, Defendants have adduced documentary evidence to support their contention that the MHL § 9.39 procedures were followed. Specifically, Defendants have directed the Court to Form OMH 474, in which Dr. Lohia contemporaneously attested, on July 23, 2013, that he examined Plaintiff and that Plaintiff was served with the Notice. (Apfel Decl., Ex. E ¶ 4, 11; Apfel Decl., Ex. B at 0008–10.) Dr. Odiah also contemporaneously confirmed in Form OMH 474 that he personally observed and examined Plaintiff on July 24, 2013. (Apfel Decl., Ex. B at 0009.) Defendants have also cited to medical records signed by Dr. Odiah and dated July 24, 2013, which further demonstrate that he evaluated Plaintiff. (*Id.* at 0062–69, 0074–75, 0092–95, 0104.) This uncontroverted documentary evidence, made contemporaneous to the events, wholly undermines Plaintiff's unsupported contentions and is fatal to her procedural due process claim. *See Vega v. Rell*, 611 F. App'x 22, 25–26 (2d Cir. 2015) (summary order) (affirming grant of summary judgment dismissing prisoner's deliberate-indifference-to-medical-needs claim where prisoner's account in his affidavit was "undercut" by "uncontroverted medical records"); *Johnson v. Kitt*, No. 15-CV-7823 (KMK), 2021 WL 1105438, at *8 (S.D.N.Y. Mar. 23, 2021) (granting summary judgment for defendant where substantial documentary evidence, namely logbook entries contemporaneously recorded by different correction officers at different parts of the facility, comprehensively undermined plaintiff's claim).

Finally, Plaintiff disputes that Dr. Odiah notified the Mental Hygiene Legal Service ("MHLS") of Plaintiff's involuntary admittance, as required under MHL § 9.39. Rather, Plaintiff maintains that "someone secretly informed" MHLS of her admittance. (Pl.'s Opp'n at 7.) However, the statute does not require that the confirming psychiatrist personally notify MHLS of a patient's admittance. It provides only that, at the time of admission, the required

notice "shall also be given to [MHLS]." N.Y.M.H.L. § 9.39(a). Thus, whether Dr. Odiah or someone else sent the written Notice is of no consequence. What is of consequence to Plaintiff's procedural due process claim is whether MHLS received the Notice. Plaintiff does not dispute that it did.

Even if the Court were to liberally construe Plaintiff's argument as disputing that written notice was given to MHLS at all, or that it was given to MHLS at the time of the admission, it would nonetheless fail. Plaintiff has not adduced any testimony from any individual with personal knowledge of MHLS's receipt of the Notice. Plaintiff has not, for example, provided deposition testimony from an MHLS representative or any person with actual knowledge stating that MHLS did not receive the Notice or that the Notice was not given to MHLS at the time of Plaintiff's admission. Instead, Plaintiff merely asserts that a representative from an on-site patient mental affairs advocacy office visited Plaintiff on July 29, 2013 and stated that she had "just been informed that [Plaintiff] was a 'patient' [in the psychiatric ward]." (Pl.'s Interrogatory Responses at 60, ECF No. 260; *see also* Pl.'s Opp'n at 7.) This is insufficient to satisfy Plaintiff's burden. This is especially so where Defendants have pointed to documentary evidence from the date of Plaintiff's admission, which states both that Plaintiff was given a copy of the Notice, and that "a copy of [the Notice was] also being sent to the Mental Hygiene Legal Service." (Apfel Decl., Ex. B at 0009.)

Plaintiff's procedural due process claim is defeated as a matter of law.

**B.  Substantive Due Process**

In addition to providing procedural protections, the Fourteenth Amendment's Due Process Clause "contains a substantive component that bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Zinermon*, 494 U.S. at 125 (internal quotations omitted). Here, Plaintiff alleges that her

temporary involuntary commitment to the hospital was a violation of her substantive due process rights. (Pl.'s Opp'n at 3.) Specifically, Plaintiff claims that Defendants admitted her without establishing that she had a medical illness that was likely to result in serious harm to herself or others, as required under MHL § 9.39(a). (*Id.* at 6–7, 10, 12–13.) Plaintiff additionally alleges that Defendants further violated her substantive due process rights by administering her medication without her consent. (*Id.* at 8, 14–15.)

Pursuant to MHL § 9.39, an individual may be admitted to a hospital involuntarily only where they are "alleged to have a mental illness for which immediate observation, care, and treatment in a hospital is appropriate and which is likely to result in serious harm to [her]self or others."[5] *Id.* Similarly, the involuntary administration of medicine is permitted "where the patient presents a danger to [her]self or other members of society or engages in dangerous or potentially destructive conduct within the institution." *Altamuro v. Cty. of Nassau*, 33 F. App'x 556, 561 (2d Cir. 2002) (citing *Kulak v. City of New York*, 88 F.3d 63, 74 (2d Cir.1996)) (internal quotation marks omitted). Of particular relevance here, the Second Circuit has found that the determination of a patient's "dangerousness" for an involuntary administration of medication claim is "essentially the same as that under Mental Hygiene Law § 9.39." *Id.* Thus, the standard for determining Plaintiff's substantive due process claim for the involuntary administration of medication is the same as that for her substantive due process claim for involuntary admission.

---

[5] "Likely to result in serious harm," as used in § 9.39, means

> 1. substantial risk of physical harm to [her]self as manifested by threats of or attempts at suicide or serious bodily harm or other conduct demonstrating that [s]he is dangerous to [her]self, or
> 2. a substantial risk of physical harm to other persons as manifested by homicidal or other violent behavior by which others are placed in reasonable fear of serious physical harm.

*Id*. § 9.39(a)(1)–(2).

10

*Id.* ("[Plaintiff's] unlawful restraint claim is evaluated under the same standards as his forced medication claim.").

Importantly, the Second Circuit has interpreted MHL § 9.39 "as implicitly deferring to medical judgment . . . [and] requiring a physician to make a medical decision, guided by standards that are generally accepted within the medical community." *Rodriguez*, 72 F.3d at 1062–63 (internal citations and alterations omitted). "Though committing physicians are not expected to be omniscient, the statute implicitly requires that their judgment . . . be exercised on the basis of substantive and procedural criteria that are not substantially below the standards generally accepted in the medical community." *Id.* at 1063. Thus, a doctor will not be liable for a substantive due process violation for treatment decisions, including involuntary hospitalization or administration of medication, "unless such decisions are such a substantial departure from accepted judgment, practice, or standards as to demonstrate that [she] actually did not base the decision on such a judgment." *Kulak*, 88 F.3d at 75 (internal quotation and alteration omitted) (applying standard to claims regarding administration of medication); *see also Bolmer v. Oliveira*, 594 F.3d 134, 144 (2d Cir. 2010) (observing that § 1983 claim for involuntary commitment requires the commitment decision "be the product of criteria *substantially* below those generally accepted in the medical community.").

While the interpretation of MHL § 9.39 is a question of law, what the medical community's generally accepted standards are is a question of fact. *Rodriguez*, 72 F.3d at 1063. Of particular relevance here, to successfully bring a substantive due process claim, a "plaintiff bears the burden of producing competent evidence, typically in the form of expert testimony, regarding applicable medical standards and the defendants' alleged failure to meet those standards." *Aouatif v. City of New York*, No. 07-CV-1302, 2019 WL 2410450, at *7–8

(E.D.N.Y. May 31, 2019) (granting summary judgment to defendants on due process claim where, in part, plaintiff failed to adduce any evidence or expert testimony setting forth the accepted medical standards with respect to involuntary hospital admission or how the medical professional defendant failed to satisfy such standards), *aff'd*, 441 F. App'x 24 (2d Cir. 2011); *see also Altamuro*, 33 F. App'x at 561 (affirming directed verdict for doctor defendants on involuntary commitment and involuntary administration of medication claims where plaintiff's expert testimony was excluded and, although plaintiff's testimony disputed some of the factual events documented in his chart, he presented no evidence that defendants' conduct fell substantially below generally accepted medical standards); *Meyers v. Health & Hosp. Corp.*, No. 13 CV 1258 CBA LB, 2014 WL 4160796, at *6 (E.D.N.Y. Mar. 28, 2014), *report and recommendation adopted*, No. 13-CV-1258 CBA LB, 2014 WL 4161975 (E.D.N.Y. Aug. 19, 2014) (granting summary judgment to doctor defendants where plaintiff failed to offer any evidence to demonstrate that doctors' professional opinions to medicate him against his will deviated from accepted medical standards); *Kraft v. City of New York*, 696 F. Supp. 2d 403, 413 (S.D.N.Y. 2010) (collecting cases), *aff'd*, 441 F. App'x 24 (2d Cir. 2011). Defendants argue that the lack of expert testimony regarding the alleged involuntary admission and involuntary administration of medicine is fatal to Plaintiff's substantive due process claims. (Defs.' Mem. at 18–19.) Defendants are correct.

Plaintiff did not consult or retain a medical expert.[6] Rather, Plaintiff simply maintains that her entire medical record is fraudulent. (Pl.'s 56.1 Opp'n at 25 ¶ 2; *see generally* Pl.'s

---

[6] Discovery lasted approximately 11 months and concluded on October 1, 2019. On May 2, 2019, Magistrate Judge Bloom directed the parties to write to the Court if they believed they needed to conduct expert discovery. Plaintiff did not write to the Court and did not retain an expert. It is no doubt burdensome for a *pro se* litigant to retain an expert witness. However, it should not go without mention that at the December 4, 2019 status conference, the Court informed Plaintiff that it would be beneficial for her to be represented at this stage in the proceedings. (Dec. 4, 2019 Tr. 16:14–17:20; Transcript on file with Chambers.) With Plaintiff's consent, the Court found well-resourced counsel, who agreed to represent Plaintiff pro bono and provided that counsel with Plaintiff's contact information.

Affidavit at 36–40, ECF No. 260.) Such a blanket, bare denial of the accuracy of the medical record cannot carry the day. *See Kulak*, 88 F.3d at 76 (observing that "bare denials of statements allegedly made by patients" are not enough to defeat summary judgment on a due process claim); *Aouatif*, 2019 WL 2410450, at *8 (granting summary judgment where plaintiff only provided "a blanket denial of the accuracy of medical records"); *Katzman v. Khan*, 67 F. Supp. 2d 103, 111 (E.D.N.Y. 1999) (finding that plaintiff's "blanket denials of his bizarre behavior and bald assertions that his examining doctors fabricated their observations" insufficient to defeat summary judgment), *aff'd,* 242 F.3d 365 (2d Cir. 2000). Absent expert medical testimony, Plaintiff cannot withstand Defendants' motion for summary judgment on her substantive due process claims. Accordingly, Plaintiff's due process claims are dismissed.

## II. Fourth Amendment Unreasonable Seizure Claim

The Fourth Amendment protects individuals against unreasonable searches and seizures. *See* U.S. Const. amend. IV. "A warrantless seizure for the purpose of involuntary hospitalization may be made only upon probable cause, that is, only if there are reasonable grounds for believing that the person seized is dangerous to herself or to others." *Anthony v. City of New York*, 339 F.3d 129, 137 (2d Cir. 2003) (internal quotations omitted). Plaintiff claims that Defendants violated her Fourth Amendment rights by confining her to the hospital while she awaited a psychiatric evaluation and for the duration of her involuntary commitment. (Pl.'s Opp'n at 11.) As with a due process claim, to defeat a summary judgment motion under the Fourth Amendment, Plaintiff must show that Defendants' determinations fell substantially below accepted medical standards. *Kraft*, 696 F. Supp. 2d at 416 (granting doctor defendants' motion

---

While discovery was closed at that point, having secured counsel for Plaintiff, the Court would have liberally granted any request by Plaintiff to re-open discovery, particularly to retain an expert. Nevertheless, Plaintiff opted to continue litigating on a *pro se* basis rather than through counsel.

13

for summary judgment on Fourth Amendment false arrest claim where plaintiff failed to present evidence that defendants' determinations fell substantially below accepted medical standards); *see also Mittelman v. Cty. of Rockland*, No. 07-CV-6382 CM LMS, 2013 WL 1248623, at *28–29 (S.D.N.Y. Mar. 26, 2013) (plaintiff's failure to submit any evidence from any doctor to support plaintiff's position that his involuntary admission amounted to an unreasonable seizure, let alone evidence that contradicted defendants' expert opinion, "doom[ed] his [Fourth Amendment] claim"). Plaintiff has failed to do so through expert testimony or otherwise. Accordingly, Defendants are entitled to summary judgment on Plaintiff's Fourth Amendment claim.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED and the claims against them are dismissed.[7]

SO ORDERED.

Dated: Brooklyn, New York
      September 29, 2021

/s/ LDH
L<small>A</small>SHANN D<small>E</small>ARCY HALL
United States District Judge

---

[7] In addition, the claims against Dr. Stone are ripe for dismissal for lack of personal involvement. "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977). The record is utterly devoid of evidence that Dr. Stone had personal involvement in the decision to hospitalize Plaintiff or in Plaintiff's medical treatment during her hospitalization. (Def. Stone's Supp. 56.1 Statement ¶¶ 16–19, ECF No. 256.) Plaintiff has offered no concrete evidence to the contrary. (Pl.'s Opposition to Def. Stone's Supp. 56.1 Statement at 9–10 ¶¶ 16–19, ECF No. 265.)